SOUTHWESTERN BELL TELEPHONE COMPANY *v.* ROBERTS.

Opinion delivered September 22, 1930.

212

*Mann & McCulloch* and *Edward B. Downie,* for appellant.

*Daggett & Daggett* and *Smith & Fitzsimmons,* for appellee.

MEHAFFY, J. This action was begun by appellee, H. E. Roberts, to recover damages against appellant for personal injuries alleged to have been caused by the negligence of I. A. Hughes, an employee of appellant, in the city of Marianna, Arkansas, between 7 and 8 o'clock in the morning of August 24, 1928. Hughes was foreman of a construction crew of the appellant company. Roberts, appellee, was 63 years old, had been living in Marianna about 23 years and was engaged in selling marble and granite work. The accident occurred on Texas Street, where the appellee then lived. He had moved into the place the day before and on the morning of the accident had had breakfast about 7 o'clock. He got in his Ford touring car and drove out of the gate and stopped the car on the south side of Texas Street, the car facing west. As he stopped the car, he got out to get a cow belonging to Mrs. Jordan back into the enclosure. The cow had got out of the gate after he had opened it and driven his car out. He stopped his car about 16 feet west of the gate. When he got out of his car, he had a plain view for about 300 yards and did not see any automobile in the street, and testified that there was none there at that time. Appellee ran after the cow and his back was towards the west, he was running in a northeasterly direction and did not see the automobile before it struck him. Hughes was driving his automobile east on Texas Street. After appellee was struck, he told Hughes he did not think he was

hurt. Hughes was driving east on Texas Street, and, according to his testimony was going 15 or 20 miles an hour, and he also testified that appellee ran out from behind his car and that it was impossible to prevent striking him. The car which Hughes was driving belonged to him and not to the appellant, and the appellant did not pay him for the use of the car and had nothing to do with it. Some of the witnesses testified that Hughes was going about 25 or 30 miles an hour.

There was a verdict and judgment for $1,000, and this appeal is prosecuted to reverse said judgment.

The only question raised on this appeal is the sufficiency of the evidence to support the verdict.

It is first contended by appellant that there was no negligence on the part of Hughes, the driver of the car; that he was driving at a moderate rate of speed and ringing his bell, his car having a bell instead of a horn; that Roberts had got out of his car and gone behind it to close the gate, and that Roberts stepped out from behind his car so quickly that Hughes did not have time to stop after Roberts appeared.

Roberts testified that he drove his car into Texas Street, got out and undertook to drive the cow back into the enclosure, but that, before he did this, he looked west on Texas Street, the direction from which Hughes came, and that there was no car in sight. He had a plain view for about 300 yards, so that according to his testimony, after he got out and started to drive the cow back, Hughes turned into Texas Street and drove east on Texas Street until he struck Roberts. After coming into Texas Street, he had more than half a block to go before he reached the place where Roberts was.

Hughes himself does not testify to any fact showing that he exercised any care at all except that he rang his bell until about the time he hit Roberts, his testimony being that Roberts came out from immediately behind his car and stepped in front of his automobile. Hughes

could have seen Roberts immediately if he had been keeping a lookout after he entered Texas Street. Roberts also testified that he was 53 feet east of the point where his car was stopped when he was struck. Roberts and one or two other witnesses testified that Hughes said he was driving fast to catch the boys who had gone on ahead. There is also testimony that his car was running at about 25 or 30 miles an hour. This was sufficient evidence to submit to the jury the question of Hughes' negligence.

It is next contended by appellant that Hughes was not engaged in the performance of the duties of his master, but was on a private errand of his own. It is true that Hughes testifies to this, but he is not supported by any witness and is contradicted by the physical facts. Mrs. Bearden, the woman he said he was going to see, lives on Mississippi Street two blocks from the hotel where Hughes' car was when he started out that morning. To go to Mrs. Bearden's he would only have to drive two blocks on Mississippi Street. At the time he struck Roberts he was considerably further from Mrs. Bearden's residence than when he started, and was going in the direction of the place where the crew had to work that day and where, according to the weight of the testimony, they had already gone. Appellant argues that Mrs. Bearden testified that Hughes called at her house between 7 and 8 o'clock the next morning and told her about the accident. She does testify that Hughes called at her house the morning after the conversation she and Hughes had after her return from Texas and told her about the accident, but she did not testify that the accident had occurred that day. She testified very positively that she did not know whether it was that day or some other day, and that she did not know whether it was on that trip or some other trip; that he came to her house many times, and one time he told her about the accident. Whether he was going direct to his work, or, as contended by appel-

lant, on a private errand of his own, was a question of fact properly submitted to the jury, and the verdict on that issue is conclusive here. Moreover, if he was engaged in the performance of the duties of the master, a slight departure would not relieve the appellant from liability, as has been held by this court several times. It is true, that if a servant steps aside from the master's business to do an independent act of his own and not connected with his master's business, the relation of master and servant is for such time suspended, and for any act of the servant when he is not engaged in the master's business, the master is not liable. It was said in the case cited and relied on by appellant: "If a servant completely turns aside from the master's business and pursues entirely his own, the master is not responsible." *Healey* v. *Cockrill,* 133 Ark. 327, 202 S. W. 229, L. R. A. 1918D, 115. The law is well settled in this State that, in order to make the master liable for the negligent acts of the servant, the servant must be at the time engaged in the master's business, engaged in the performance of his duties as a servant.

It is next contended by appellant that it is not responsible for the injuries to appellee because Hughes was at the time driving a car owned and maintained by himself, and appellant cites and relies on the case of *St. L. I. M. & S. R. Co.* v. *Robinson,* 117 Ark. 37, 173 S. W. 822. It argues that that case is precisely in point, but in that case the court said: "If the service required of the call boy could not have been performed in the time given therefor without the aid of the instrument used, the bicycle, it would have occasioned a necessity, and the knowledge by the agent of such use in the performance of the service would have amounted to an implied authorization thereof, making the railroad liable for a negligent injury thereby." There was sufficient evidence in this case to justify the jury in finding that the service to be performed by Hughes could not have been performed, as he says, by

walking, without the use of the instrumentality. used, without the use of automobile or some means of conveyance. He was the foreman and had charge of construction of all the lines, not only in the city of Marianna, but the lines running out from Marianna. Oakwood was some distance south of Marianna, and the place where the crew was at work on this day was some distance south of Oakwood, so it was necessary for appellant's servant to travel some three or four miles to get to the place where the crew was to work. It was at least a question of fact as to whether it was necessary to use the instrumentality in the performance of his duties, and this question was submitted to the jury under proper instructions, to which no objection is urged. Moreover, Hughes was using this automobile in the performance of his duties for the master, and the undisputed proof shows that the master knew it. While he said it was not necessary because he could have walked, the facts and circumstances show that he could not have walked and performed his duties. He admitted that his duties in the supervision of the work covered practically the whole of the system in Marianna as well as lines leading in and out, and while he tried repeatedly to show that he did not use the automobile in the company's business, yet on the very day of the accident he went to Oakwood and the place where the crew was at work, in the automobile and stayed there a while and went elsewhere. He testified that he did not stay with the crew all the time. He evidently had other places to go in the performance of his duties. He was asked if he went to Oakwood that day, and he said he did, that he drove out there, but that he did not stay with the job all the time. That he went out to the job, and when asked if he meant to tell the jury the first time he used the automobile on the company's business was the day this accident occurred, he said, ''No, sir, I mean to tell you that the company never did pay me for the use of my car on the job.'' Again, he was asked, ''You did drive down there on that particular morning?'' and he an-

swered, "Yes, sir." He was then asked, "That was the first time from 1926 up to the date of the accident that you drove it on the company's business?" and he answered, "No, sir, I drove it many times on the company's business." On the morning of the accident and immediately after the accident, Roberts and other witnesses testified that Hughes said he was driving a little fast in order to overtake the crew. All of the evidence shows that Hughes was at the time of the accident about the business of the master, was acting within the scope of his employment or authority. The question of Hughes' negligence, the question as to whether or not he was at the time acting within the scope of his employment and the question whether he used the automobile in the performance of his duties with the knowledge of the master, are all questions of fact, were all submitted to the jury under proper instructions, and the rule here is, if there was any substantial evidence to support the verdict, it will not be disturbed by this court. In this case there was substantial evidence to support the verdict, and the judgment is therefore affirmed.