Argued October 10; affirmed December 17, 1935; rehearing denied
January 28, 1936

# WILSON *v.* STEEL TANK & PIPE CO. OF
# OREGON ET AL.

(52 P. (2d) 1120)

*John S. Coke*, of Portland (Griffith, Peck & Coke, of Portland, on the brief), for appellant.

*George Neuner*, of Portland (Neuner & Kimmell, of Portland, on the brief), for respondent.

BEAN, J. It is conceded that the defendant Dierking was an officer and agent of the appellant corporation. The question for determination is whether the testimony warranted the jury in finding that at the time of the accident he was acting for and on behalf of his employer, the Steel Tank & Pipe Company, in furtherance of its business and within the scope of his employment.

■■ The testimony on behalf of appellant differs from that of plaintiff upon some material points, but, where persons of reasonable minds might draw different inferences from conflicting evidence introduced to establish a fact in dispute, the question becomes one for the jury. The court is not to determine the weight of the evidence. The verdict of the jury, where the evidence is conflicting, will not be disturbed, if there is substantial evidence to support the verdict: *Miller v. Service & Sales, Inc.*, 149 Or. 11 (38 P. (2d) 995, 96 A. L. R. 628); *Mansfield v. Southern Oregon Stages*, 136 Or. 669 (1 P. (2d) 591); *Pryor v. Strawn*, 73 Fed. (2d) 595.

At the close of the testimony appellant moved the court for an order directing the jury to return a verdict in its favor, and submitted written instructions to the jury directing a verdict in favor of defendant Steel Tank & Pipe Company, which motion and requested instructions were denied. The appellant assigns the rulings as error.

Appellant states in its brief:

"An employee 'while acting as his own master for the time being, is not within the scope of his employment so as to render the master liable therefor'. If the act resulting in the injury is committed by the servant at a time when he is off duty, the master will not be held liable therefor." Citing *Reardon v. Coleman Bros. Inc.*, 277 Mass. 219 (178 N. E. 638); *Pyyny v. Loose-Wiles Biscuit Co.*, 253 Mass. 574 (149 N. E. 541); *Khoury v. Edison Electric Illuminating Co.*, 265 Mass. 236 (164 N. E. 77, 60 A. L. R. 1159); *Slater v. Advance Thresher Co.*, 97 Minn. 305 (107 N. W. 133, 5 L. R. A. (N. S.) 598); *Archie v. Hudson-Essex Co.*, 45 R. I. 109 (120 Atl. 162).

We are in accord with this statement.

The jury were warranted in finding from the testimony in the case that defendant Dierking, vice president of the Steel Tank & Pipe Company, went to Vancouver, Washington, on October 24, 1933, in the interest of his employer, the Steel Tank & Pipe Company. Prior to that date, the Steel Tank & Pipe Company had done considerable business with the Star Brewery Company of Vancouver, where Dierking went, and there was considerably more business in the offing. About 17 fermenting tanks had been installed under the inspection of Dierking and eight storage tanks were contracted for by the Star Brewery Company from the appellant and were in preparation for being installed. As one witness stated, 60 storage tanks were purchased by the Star Brewery Company and installed by the Steel Tank & Pipe Company at this brewery. The jury would not be presumed to think that the officers of the Steel Tank & Pipe Company would be willing to have their work first inspected and tested by a competitor, where they made repairs and installed the smokestack, without the Steel Tank & Pipe Company being represented. It was in their interest that Dierking should be there at the time appointed to commence the operation of the brewery. He was there and went through the plant on one floor. He intended to be there while the brewery was in operation but was late, and he expected to hear about the operation. The fact that there was a social gathering there at the time would not change the matter. Undoubtedly the jury believed the Steel Tank & Pipe Company was interested in ascertaining the time for resuming the installation of the tanks, which the testimony indicates depended upon starting the operation of the brewery. The installation of the tanks by the appellant was not completed at the time of the visit of Dierking on October 24. It was

only suspended. Indeed, in describing the transaction to the jury, Dierking, in referring to one of the contracts for the tanks, said: "It was the contract that was being installed at the time of this accident."

In *Miller v. Service & Sales, Inc.*, supra, Mr. Justice BELT uses the following language:

"However, if the evidence is not of such conclusive nature and reasonable-minded persons might draw different inferences therefrom, it is not within the province of the court to direct a verdict. No jury is bound to believe evidence, even though uncontradicted, if it is clouded with uncertainty and improbability. If there are facts and circumstances negativing the idea that this car was loaned to Erskine, the finding of the jury on the question of agency is conclusive."

In *Pryor v. Strawn*, 73 F. (2d) 595, at page 596 of the report, we read:

"The denial of defendants' motion for a directed verdict brings before us the question of the sufficiency of the evidence to sustain the judgment and verdict. In considering that question, we do not weigh the evidence, but examine it only for the purpose of determining whether or not there was substantial evidence to sustain the verdict. [Citing authority.] We must accept the testimony in favor of plaintiff as true, and plaintiff is also entitled to such reasonable favorable inferences as may fairly be drawn therefrom, and, where the evidence, when so considered, is of such a character that reasonable men may reach different conclusions, then the case presents a jury question, and the court should not direct a verdict."

■ As we understand the brief of appellant, it is contended that the statements of T. L. Hanning are not competent or binding upon the appellant. The general rule is stated in 3 Enc. of Evidence, 638, as follows:

"The general rule is that admissions and declarations of an officer or agent of a corporation against the interest of the corporation are binding upon it,

and admissible in evidence against it, provided that at the time they were made the officer or agent was acting for and on behalf of the corporation, and within the scope of his authority, or, although at the time when they were made, they were not expressly authorized or provided for, they had been since ratified by the corporation."

In 4 Cook on Corporations, (8th Ed.) § 726, it is stated, in substance, that if a particular officer or agent has power to represent or contract for a corporation, he may in many cases bind the company by his admissions or declarations in regard thereto. His power to do so must be shown. See 22 C. J. 386, § 460. In the present case the undisputed evidence is that Dierking made the estimate for the tanks contracted for and Mr. Hanning signed the contracts for the corporation. The jury would be warranted in believing he was authorized to do so.

■ The testimony indicated that Dierking was the agent and servant of the Steel Tank & Pipe Company and was engaged in its business at the time of the accident, and that he was using his own car for the company. We think the sound and reasonable rule in regard thereto is as announced in *Cook v. Sanger,* 110 Cal. App. 90 (293 P. 794, 800), as follows:

"If one has control or the right to control the person operating the automobile, has the power of employment or discharge, and may direct the person operating the automobile where to go and what services to perform upon his mission, and has a right to discharge the employee for any disobedience or any wrongful act while on such mission, we think the legal power of control and the relation of master and servant is established."

■ It is the contention of appellant that in any event Dierking terminated his day's work when he left the

brewery at Vancouver, and that at the time of the accident he was on his way home. If, as we think the jury was warranted in believing, Dierking went from Portland to Vancouver on a mission for his company and in the furtherance of its interests, it was just as much a part of his duty to return to Portland, which he was doing when the accident happened, as it was in going from Portland to Vancouver. If a man is employed by another to go from Salem to Eugene to sell some bonds for his employer, and proceeds to that place and transacts the business, it is a part of that business when he returns to Salem. It could not be expected that Dierking would remain at Vancouver and decimate the citizenship of Oregon. See *Western Union Tele. Co. v. Dubell,* 69 Fed. (2d) 149, where the court said:

"The errand on which the master had sent the boy required a movement out and a movement back, both within the field of his employment. The outward movement was confessedly within the scope of his employment. Was the return movement also within the scope of his employment? The learned trial judge did not know; nor do we."

In *Silent Automatic Sales Corp. v. Stayton,* 45 Fed. (2d) 471, the court, in passing upon the question of master and servant, said:

"There is no dispute as to the ownership of the car, nor that it was used in the business of appellant. The fact that ownership was in Smith, an employee, instead of in appellant, cannot avail the latter. Yellowway v. Hawkins (C.C.A. 8) 38 Fed. (2d) 731. The crucial question upon this phase of the controversy is whether the employee-driver was then and there engaged in the line of his duty, and within the scope of his employment. *   *   *

The great weight of reason and authority is to the effect that where an employee is returning from work, with the consent and by authority of the em-

ployer, in a vehicle owned or used in the business of the employer, he is acting within the scope of his employment.''

See also *Altoonian v. Muldonian*, 277 Mass. 53 (177 N. E. 830).

In *May v. Farrell*, 94 Cal. App. 703 (271 P. 789), we find the following:

''Where the service is not performed at a fixed place, it might properly be held, as was suggested in the above case, that the day's employment commenced at the hour in the morning when the servant reported for duty, and terminated upon his return in the evening; and it is immaterial in determining the question of agency whether he was going upon or returning from an errand undertaken in pursuit of his master's business (citing cases), it being sufficient, as above stated, that he was engaged in acts contributing to the service; and where the evidence raises the question whether he was so engaged the issue is one for the jury. (Citing cases).''

Dierking, who was an officer of the Steel Tank & Pipe Company, and who went to Vancouver instead of the president, is to be distinguished from an ordinary laborer who is employed a certain number of hours and whose responsibility to his employer ends when his day's work is done. Every act done by Dierking in behalf of his company and in furtherance of the interests thereof was a direct act of the corporation. The jury could consider that Dierking does not appear to be interested personally in the business conducted by the Steel Tank & Pipe Company and the Star Brewery Company, and also take into consideration the fact that during the suspension of the actual work of installing the tanks he made two visits to the Star Brewery Company inquiring in regard to the arrangement and noticing the success of the work performed by his company,

and that on the last of such visits, October 24, he was sent there by T. L. Hanning, president of the defendant corporation, and was acting for and on behalf of his employer and within the scope of his employment: *Bingham v. Lipman*, 40 Or. 363, 371 (67 P. 98) ; *Gill v. Selling*, 125 Or. 587 (267 P. 812, 58 A. L. R. 1556) ; *Pelton v. Gen. Motors Accept. Corp.*, 139 Or. 198, 205 (7 P. (2d) 263, 9 P. (2d) 128) ; *Lane v. Nat. Ins. Agency*, 148 Or. 589 (37 P. (2d) 365). In *Pelton v. Gen. Motors Accept. Corp.*, supra, Mr. Justice Belt used the following language:

"However, we do not consider that Broadbent may be classified as an inferior or menial agent. He was directed by the credit manager to exercise supervision over the collection of the amount due under the contract with the plaintiff. Prior to such direction the credit manager had authorized the Fireman's Fund Insurance Company to repossess the car. The action of Broadbent could well be looked upon as one of a managing officer and, therefore, what he did amounted to a participation by the corporation in the violation of the rights of the plaintiff."

In *Southwestern Bell Tele. Co. v. Roberts*, 182 Ark. 211 (31 S. W. (2d) 302, the driver of the car was foreman for the appellant. The driver owned the automobile, and the company paid nothing for its upkeep or use, nor for gas or oil. The evidence showed that the car had been used previously in the company's business by the foreman, with the master's knowledge. On the day in question the driver and owner of the automobile was driving his car, at about 7 :30 a. m., in the direction in which he had a crew working some miles away, when the accident happened. The court held that the question of the master's liability was for the jury.

In *King v. Emerson*, (Cal. App.) 288 P. 1099, the court holds where the relationship of master and serv-

ant is established, the question as to whether the servant was in the performance of the master's business or acting within the scope of his employment at the time the accident occurred, where there is any evidence upon this question, is one for the jury. As shown on page 1103 of the report, the court said:

"It is contended that Fairfield was not acting in the scope of any employment. We are satisfied that there was sufficient evidence to justify the jury in concluding that Fairfield, at the time of the injury, was acting in discharge of his duties. If a servant, employee, or agent is engaged in business in which the master is interested, either directly or indirectly, it is the master's business, and he will be held liable." See *Guitar v. Wheeler*, (Tex. Civ. App.) 36 S. W. (2d) 325; *Tyler v. Moore*, 111 Or. 499, 509 (226 P. 443).

In *Fidelity Union Life Ins. Co. v. McGinnis*, (Tex.) 62 S. W. (2d) 186, it appeared that at the time of the accident the employee was on his way to see an insurance prospect and was operating his own car on which he paid all expenses, and without his employer's knowledge. The court held that he was not an independent contractor and was acting within the scope of his employment with implied authority to use the car, and that the employer was liable to the injured parties.

A careful reading and study of the testimony in the case leads us to believe there was no error of the trial court in denying appellant's motion for a directed verdict or in refusing to instruct the jury to find a verdict for appellant.

It follows that the judgment of the circuit court should be affirmed. It is so ordered.

BELT, J., not participating.

ROSSMAN, J., dissenting.

RAND, J. (dissenting). The sole question for decision upon this appeal is whether the defendant company is answerable for the negligent acts of George C. Dierking, one of its officers, while he was returning to his own home after the completion of his day's work and while driving his own automobile.

The admitted facts are that on October 24, 1933, the plaintiff sustained personal injuries in a collision between an automobile in which she was riding and one driven by Dierking; that during the afternoon preceding the accident, Dierking had gone from the defendant company's plant to Vancouver, Washington, on company business and, after completing such business, was returning in his own car to his own home, and not back to the company's plant.

Under such circumstances, it does not seem reasonable to say that there was any corporate liability on the part of the defendant company. It must be borne in mind that we are not now dealing with the question of whether the company would have been liable had the accident happened while Dierking was going to Vancouver on business for the company, or while going there had deviated from the usual route, or if the accident had happened while Dierking was driving a car belonging to the company, or, if at the time of the accident, he had been going somewhere for the purpose of performing some duty or service which he owed to the company. On the contrary, he had completed his services for the day and was merely returning home in his own car, choosing his own route and, while doing so, was not subject to the orders or control of any other person. If the company is liable under the undisputed facts of this case, then every corporation would be answerable for the negligence of every officer of the corporation after they had left its place of business at

the end of their day's work and while returning to their own homes in their own cars.

Under the maxim, *qui facit per alium, facit per se,* the act of the servant, while engaged in his master's business and acting within the scope of his authority, is the act of the master. "This rule", said Chief Justice Shaw, "is obviously founded on the great principle of social duty that every man in the management of his own affairs, whether by himself or by his agents or servants, shall so conduct them as not to injure another; and if he does not, and another thereby sustains damage, he shall answer for it.": *Farwell v. Boston, etc., R. Corp.,* 4 Met. (Mass.) 49 (38 Am. Dec. 339). As pointed out in 2 Street on Foundations of Legal Liability, p. 467:

"One of the necessary implications of the fundamental axiom of agency is that the act of the servant, before being imputable to the master as his, must be done by the servant in the capacity of servant."

On the following page, he says:

"The proper criterion by which to determine whether in a given case the relation of master and servant exists is found in the right of the master to order and control the other in the performance of the work. A master is one who not only prescribes to the workman the end of his work, but directs, or at any moment may direct, the means also; or, as it has been put, 'retains the power of controlling the work.' "

Again, as said:

"The relation of master and servant exists when the employer retains the right to direct not only what shall be done but how it shall be done."

*New Orleans M. & C. R. Co. v. Hanning,* 15 Wall. (U. S.) 656 (21 L. Ed. 220).

Obviously, under the undisputed evidence in this case, Dierking, at the time of the accident, was not

acting as a servant or agent of the defendant company, but was transacting his own business in his own way. As to him, the authority of the master ceased when he left Vancouver after having fully completed the duties that had been there intrusted to him. These duties did not require him to return to the defendant company's plant and it was admitted that Dierking was on his way home at the time the accident occurred. Whether he went home that night or whether he stayed in Vancouver and, if he went home, what route or means of conveyance he took to reach home were matters in which the defendant company had no concern. He exercised his own choice and, while doing so, the defendant company ought not to be held liable for his acts. This case, therefore, ought not to be governed by any sentimental sympathy on the part of the court and the consequent desire to enforce reparation from some responsible person if Dierking, against whom plaintiff has recovered judgment, is, as intimated, insolvent. As was said by Professor Pollock in his Essays in Jurisprudence, 118:

"A wrong without a remedy is, in theory at least, odious to the law; but in many cases the law cannot prevent the remedy from being only nominal. It may compel wrongdoers to pay if they can, but it cannot make them solvent; and it must now and then happen that an injured person has no better comfort at his hands than a right of action against a man of straw. To the popular mind a remedy not substantial is no remedy at all, and a result of this kind is not only unsatisfying (as it must be to every honest man), but unintelligible. Hence there is a natural endeavor to fix responsibility on some one who can pay. In the case of injury suffered through a servant's negligence, the servant, generally speaking, cannot pay, and the master can; and the feeling that compensation ought to be had somewhere, jumps at the master's liability."

While this instinctive desire upon the part of all persons is a good argument in favor of compulsory automobile insurance, it ought to afford no ground for holding the defendant company in this case responsible for acts over which it had no control. For these reasons, I can not concur with my associates in holding that the judgment against the defendant company should be affirmed.