Argued October 13, 1972, reversed with directions
February 23, 1973

HEIDE, *Respondent, v.* T.C.I. INCORPORATED,
*Appellant.*

PARKER, *Respondent, v.* T.C.I. INCORPORATED,
*Appellant.*

506 P2d 486

*Kenneth D. Renner,* Portland, argued the cause for appellant. With him on the briefs were Wayne A. Williamson and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

*Raymond J. Conboy,* Portland, argued the cause for respondents. With him on the brief were Garry Kahn and Pozzi, Wilson & Atchison, Portland, for respondent Heide, and Jack L. Kennedy and Kennedy & King, Portland, for respondent Parker.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, HOWELL and BRYSON, Justices.

HOWELL, J.

These are actions for personal injuries arising out of a collision between cars driven by Sheila Bebout and Thomas Parker. Both drivers were killed, and Marvin Heide, a passenger in the Parker vehicle, was injured. Heide and the administratrix of the Parker estate filed actions against defendant, T.C.I. Incorporated, the employer of Mrs. Bebout.

The cases were consolidated for trial on the issue of liability only. The defendant moved for a nonsuit and directed verdict on the ground that the evidence failed to show that Mrs. Bebout was acting in the course and scope of her employment at the time of the accident. Both motions were denied, and the jury returned a verdict for defendant. The trial court granted a new trial on the ground that the jury should have been instructed that Mrs. Bebout was negligent as a matter of law. Defendant appeals.

Defendant presents two assignments of error. However, it is necessary that we consider defendant's second assignment only—that the trial court erred in

denying the motions for a nonsuit and directed verdict because plaintiffs failed to establish that Mrs. Bebout was in the course and scope of her employment at the time of the accident.

All parties agree that the essential evidence is undisputed.

The accident occurred on Thursday, February 26, 1970, when Mrs. Bebout's auto left the southbound lane of Interstate 5 a few miles north of Salem, crossed the median divider, and collided head on with the northbound auto of Thomas Parker.

Mrs. Bebout, who lived in Salem, was a vice-president of defendant T.C.I. Inc., a newly established advertising and public relations firm with offices in southwest Portland. The entire corporate personnel consisted of three officers and a receptionist-secretary.

The auto involved in the accident was owned by Mrs. Bebout and her husband. When the car was purchased, the corporation advanced three or four months' "car allowance" to Mrs. Bebout to be used as a down payment. Thereafter the corporation paid Mrs. Bebout $118 per month (the amount of her car payment) as car allowance; paid for any necessary maintenance; and paid Mrs. Bebout 3 cents per mile for any business use of the car. She was not paid mileage for going to and from her home in Salem unless she happened to be making some deliveries for the company or unless she was going from Portland to Salem on a business trip. She was paid mileage if she returned to the office to work on a Saturday or Sunday. The corporation leased one or two other cars for the use of other personnel.

Mr. Bebout testified that "it was very rare that

she [Mrs. Bebout] did not work at home on weekends and fairly often in the evening." The work consisted of "typing, writing or telephoning."

For some time prior to the accident, Mrs. Bebout had been doing public relations work on the opening of a new plant for Freightliner Corporation. On the day of the accident she was "physically exhausted" from the hours spent on the opening, which had occurred a few days previously. That afternoon a friend called her at the office and invited her to have a drink when she was free. She declined, saying that she had to "head south" and "I can't tonight, I'm going home." A representative of Freightliner was in the office, and a few minutes after 5 p.m. the two left the office together, stopped at a bar four or five blocks from the office, and had a drink. Mrs. Bebout departed for Salem, and the accident occurred approximately four miles north of Salem at 6:20 p.m.

At the time of the accident Mrs. Bebout's car contained some notebooks, her briefcase, and two partial cases of liquor which had been left over from the Freightliner opening and which were eventually to be returned to Freightliner.[1]

---

[1] The secretary-treasurer of the corporation, Mrs. Walsh, testified to the following regarding Mrs. Bebout's use of her car:

"Q. Now, reference has been made to the terms of Mrs. Bebout's car. What is the fact relating to how Mrs. Bebout used her car as far as keeping things in it? How did she use her car in that respect?

"A. She was really a pack rat. There was a lot of things like these press kits for plant openings. They were outdated material and there was no reason to keep them around. We would file them when Sheila would bring them out of the car. There was information brought to us that was found in the car after the accident and none of it was pertinent or timely or anything that was being worked on at that time. A lot of it was old and could have just been discarded. I would say 90 per cent of it could have been thrown away."

■ The general rule in this state is that an employee going to or from his work is not in the course of his employment at that time. *Elliott v. Rogers Construction,* 257 Or 421, 479 P2d 753 (1971); *Crosby v. Braley & Graham,* 171 Or 72, 134 P2d 110 (1943); *Larkins v. Utah Copper Co.,* 169 Or 499, 127 P2d 354 (1942); *Hantke v. Harris Ice Machine Works,* 152 Or 564, 54 P2d 293 (1936). The same general rule applies in workmen's compensation cases in this state. *White v. S.I.A.C.,* 236 Or 444, 389 P2d 310 (1964); *Philpott v. State Ind. Acc. Com.,* 234 Or 37, 379 P2d 1010 (1963).

Many exceptions to the general rule have been established. Some are mentioned in *Hantke v. Harris Ice Machine Works,* supra:

"* * * [W]here the employer furnishes transportation to the place of work or the employee travels over a way expressly or impliedly authorized * * * by the employer, or while the employee is traveling upon the premises of the employer; * * * where the employee is using an automobile * * * furnished by the employer or bringing property * * * pertaining to the employer's business; * * *." 152 Or at 568.

Other exceptions are where the employer pays extra compensation to cover the cost of transportation or compensates the employee for the period of time when he is going to or from work. *I-L Logging Co. v. Mfgrs. & Whlse. Ind. Exc.,* 202 Or 277, 273 P2d 212, 275 P2d 226 (1954).②

The reason for the rule excluding going to and coming from the regular place of employment from the

---

② In *King v. Ind. Acc. Comm.,* 211 Or 40, 309 P2d 159 (1957), a workmen's compensation case, a workman on his way to work was found to be in the course of his employment when he was carrying "impedimenta of the employment" with him.

course and scope of employment is stated in *Philpott v. State Ind. Acc. Com.,* supra, as follows:

"* * * [T]he relationship of employer and employee is ordinarily suspended 'from the time the employee leaves his work to go home until he resumes his work, since the employee, during the time that he is going to or coming from work, is rendering no service for the employer.' " 234 Or at 41, citing 8 Schneider, Workmen's Compensation Text (perm ed) 3-6.

■ As Professor Mechem points out, no successful analysis of the term "course of employment" has ever been made and probably none will ever be made. Mechem, Agency 246-47, § 366 (1952). Each case must be decided on its own facts, and there is no fixed rule decisive of all cases. *I-L Logging Co. v. Mfgrs. & Whlse. Ind. Exc.,* supra.

The plaintiff relies on the cases of *Wilson v. Steel Tank & Pipe Co.,* 152 Or 386, 52 P2d 1120 (1936), and *Larkins v. Utah Copper Co.,* supra. In *Wilson* a corporate vice-president of defendant company was involved in an accident while returning to Portland—his home and place of employment—after an evening business trip to Vancouver, Washington. The vice-president drove his own car and was reimbursed for his business mileage. This court held that the vice-president was in the course of his employment when he was returning from Vancouver to Portland:

"* * * If, as we think the jury was warranted in believing, Dierking [the vice-president] went from Portland to Vancouver on a mission for his company and in furtherance of its interests, it was just as much a part of his duty to return to Portland, which he was doing when the accident happened, as it was in going from Portland to Vancouver. * * *" 152 Or at 395.

We believe that the facts in *Wilson* show that the vice-president was more on a "special errand" type of business for his company than that of going to or from work.[9] The opinion states that the accident occurred after he crossed the interstate bridge and was proceeding in a direction toward both his home and the company plant. The opinion does not state that he was en route to his home.

In *Larkins v. Utah Copper Co.,* supra, the defendant company was engaged in purchasing lumber from various mills in Oregon and Washington and maintained an office in Portland. The company sent its lumber inspectors to various mills. These inspectors used their own cars but were allowed some travel expense. On returning from a trip to Washington one of the inspectors was involved in an accident. This court held that the question of respondeat superior was properly submitted to the jury. We do not believe that *Larkins* is comparable to the instant case. In *Larkins,* when the accident occurred the inspector was en route home from a trip to a mill near Centralia, Washington. Upon his arrival home after such inspections, he was required to report to his office and be available for other assignments. It can hardly be said that the situation there was the same as in the ordinary case of commuting from office to home.

Some courts in workmen's compensation cases have recognized a further exception to the going and coming rule. When the workman is required, as part of his employment, to use his vehicle on the job he is considered in the course of his employment while go-

---

[9] Such interpretation of *Wilson* finds support in Gossett v. Simonson, 243 Or 16, 411 P2d 277 (1966), where we held that the employee in *Wilson* was not engaged in driving to and from work as the term is used in relation to a commuter.

ing to and from work. 1 Larson, Workmen's Compensation Law 4-146, § 17.50. The author states the rationale for the exception as follows:

"* * * The theory behind this rule is in part related to that of the employer-conveyance cases: the obligations of the job reach out beyond the premises, make the vehicle a mandatory part of the employment environment, and compel the employee to submit to the hazards associated with private motor travel, which otherwise he would have the option of avoiding. But in addition there is at work the factor of making the journey part of the job, since it is a service to the employer to convey to the premises a major piece of equipment devoted to the employer's purposes. * * *"

The appellate courts of California follow the exception mentioned by Larson. In *Smith v. Workmen's Compensation Board,* 69 Cal 2d 814, 73 Cal Rptr 253, 447 P2d 365 (1969), a social worker who was required to use his car on his job was killed in an accident while on his way to work. The Supreme Court of California, with three judges dissenting, held that bringing the car to work was a benefit to the employer and therefore the employee was in the course of his employment.

A California Court of Appeals applied the same exception endorsed by the California Supreme Court in *Smith* in workmen's compensation cases to a tort case in *Huntsinger v. Glass Containers Corp.,* 22 Cal App 3d 803, 99 Cal Rptr 666 (1972). There, an employee of the defendant was required to use his pickup in his work as a technical service representative of his employer. The employee was reimbursed for business use of his vehicle but did not receive a mileage allowance for traveling to and from work. The

employee was involved in an accident while driving home from the company office.

The California Court of Appeals recognized the rule of liberal construction in workmen's compensation cases as being instrumental in the development of exceptions to the going and coming rule in compensation cases.

The court stated that the basic justification for the doctrine of respondeat superior is that " 'the losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business.' " 22 Cal App 3d 808.

Finding that the employee's use of his truck was a benefit to his employer, the court stated:

> "Presumably, ordinary members of respondent's work force would not be required to use their vehicles in company business and would not, therefore, be required to drive their vehicles to and from work. The means by which they travel to and from work is a matter of complete indifference to respondent. Not so with respect to Fell [respondent's employee]. Viewing the evidence most favorably to appellants, Fell was required to use his automobile in carrying out his employment duties. Obviously, this arrangement constituted a benefit to respondent. Unless Fell drove his vehicle to and from the office, he would not have it available for the beneficial use of respondent when it was needed. His driving his vehicle to and from the office was, therefore, incidentally beneficial to respondent in a manner not common to commute trips by ordinary members of its work force. In other words, when a business enterprise requires an employee to drive to and from its office in order to have his vehicle available for company business

during the day, accidents on the way to or from the office are statistically certain to occur eventually, and, the business enterprise having required the driving to and from work, the risk of such accidents are risks incident to the business enterprise. We do not deal, of course, with a case in which the employee was not directly driving home but was engaged on some errand of his own." 22 Cal App 3d at 810.

In addition to enterprise liability as the basic justification for respondeat superior, the California cases also apply the test of whether the employee's activity was of benefit to the employer and subject to the employer's right to control. See e.g., *Harris v. Oro-Dam Constructors,* 269 Cal App 2d 911, 75 Cal Rptr 544 (1969), where the court stated:

"* * * Activity 'within the scope of employment' is the pivot of the employer's responsibility, but the pivoting action responds to two primary inquiries: (1) the activity's benefit to the employer's enterprise and (2) his right to control it. * * *" 269 Cal App 2d at 915.

The "benefit to the employer" rule as the test of vicarious liability of the employer has been expressly rejected by this court in *Gossett v. Simonson,* 243 Or 16, 411 P2d 277 (1966). There, the defendant was a cheesemaker employed at an hourly wage by Safeway Stores, Inc. He was given two tickets to a dairy producers' meeting to be held out of town. Defendant drove his own automobile to the meeting and was not reimbursed for his travel. On his way to the meeting, defendant was involved in an accident. In the ensuing litigation against defendant and his employer, Safeway Stores, a jury exonerated Safeway. On the appeal plaintiff urged this court to apply the "benefit to the

employer" rule to establish vicarious liability against Safeway.

This court, by Mr. Justice GOODWIN, discussed the theory of enterprise liability as the basic justification for the doctrine of respondeat superior but also pointed out that it was necessary to find that the servant was "about his master's business and under his control." The court also quoted from Mechem, supra at 246, § 365:

"* * * If the purpose of *respondeat superior* is to put on the business, for the purpose of allocation, the risks of the business, that plainly means just the risks of carrying on the business; it does not include the risks of the personal conduct of all connected with the business, simply because they are connected with the business * * *."

We rejected plaintiff's invitation to accept the "benefit to the employer" test and stated:

"Since the imposition of liability upon a non-negligent employer is itself an exception to the general rule that there is no legal liability without fault, a plaintiff seeking damages from such an employer must prove that the harm-producing activity was in furtherance of the employer's business and that the employer had the right to exercise some degree of control over the workman in the conduct of such activity. Without these two elements, there would be no reason, in a fault-oriented tort system, to bring a non-negligent employer into the picture at all." 243 Or at 26.

■ In the instant case we cannot see how it can be said that Mrs. Bebout was in the furtherance of her employer's business after she left the bar and started for her home in Salem. Neither can we see that her employer had any right to control Mrs. Bebout in traveling from Portland to Salem. Her employer had

no right to dictate the manner of travel, the route to be taken, her speed, or that she use her car to drive home as compared to other modes of travel.

As the facts are undisputed, we conclude that the court should have directed a verdict in favor of defendant on the question of respondeat superior.

Reversed with directions to reinstate the judgment for defendant.