On appellant's reconsideration filed February 19, and on respondents' reconsideration filed March 13; reconsiderations allowed, former opinion (71 Or App 549, 693 P2d 54) adhered to July 3, reconsideration denied September 20, both petitions for review denied November 5, 1985 (300 Or 249)

# CALIFORNIA CASUALTY INSURANCE COMPANY,
## *Appellant,*

*v.*

# DAVID DOUGLAS SCHOOL DISTRICT et al,
## *Respondents.*

## (A8012-07083; CA A28753)
### 702 P2d 1115

G. Kenneth Shiroishi, Portland, and Dunn, Carney, Allen, Higgins & Tongue, Portland, for appellant's petition.

Susan E. Watts, Portland, and Dressler & Granata and Kennedy, King & Zimmer, Portland, for respondents' cross-petition.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Plaintiff petitions and defendants cross-petition for review of our decision in *Calif. Cas. Ins. v. David Douglas School Dist.,* 71 Or App 549, 693 P2d 54 (1984). We treat the petitions as requests for reconsideration, allow them and adhere to our original opinion.

Plaintiff reasserts that St. Paul provided the district with general liability insurance which included primary coverage for any district liability in this case.[1] In our original opinion, however, we stated:

> "St. Paul's policy by its terms did *not* insure the district against liability for Salvo's acts when he drove his *own* car, even if he was then within the scope of his employment." 71 Or App at 552. (Emphasis in original.)

That statement is correct. We have again reviewed the record. The only policy of St. Paul's in evidence is Exhibit 14, which includes the business auto policy. Although Exhibit 14 recites on the declarations page that St. Paul insured the district for "comprehensive general liability" with a $500,000 limit, the terms of the coverage, including any applicable "other insurance" clause, are not in evidence.[2]

On this record St. Paul did not provide the district with general liability coverage applicable to this case.[3] Plaintiff relies on testimony of Harrigan, a St. Paul employe, to establish the terms of a general liability coverage. He testified:

> "Q:   If David Douglas was sued for the act of an employee driving his own car on behalf of David Douglas, under that

---

[1] If so, then plaintiff and St. Paul both insured the district and, if Salvo acted within the course and scope of his employment, an allocation of that shared responsibility would be at issue. *See Lamb-Weston et al v. Ore. Auto Ins. Co.,* 219 Or 110, 341 P2d 110, 346 P2d 643 (1959).

[2] Every other type of coverage listed on the declarations page of Exhibit 14 has a corresponding underlying coverage form. Exhibit 14 omits the general liability coverage form.

[3] Plaintiff asserts in its petition that:

> "The issue of whether St. Paul was the district's insurer in these present matters was, thus, *not* in dispute. * * * Neither the district nor St. Paul ever took a contrary position either at trial or on appeal."

Defendants' pleadings, however, did put the matter in dispute, and their trial memoranda do not acknowledge that St. Paul insured the district's liability in this case.

insurance policy, David Douglas would be protected by St. Paul; is that correct?

"A:   Yes, that's correct."

Exhibit 14 does not support his answer, and it is contradicted by other evidence. Plaintiff now asserts for the first time that St. Paul's business auto policy covered the district's first-dollar liability, not only for district-owned vehicles but for "any auto" and, therefore, for Salvo's automobile. Plaintiff's argument has no merit.[4]

■ ■   In their cross-petition, defendants assert that we erred when we stated that, "as a matter of law, Salvo was acting within the scope of his employment * * *." 71 Or App at 551. We reaffirm our statement. The material facts are undisputed.[5] The finder could not reasonably draw conflicting inferences from the facts. Whether Salvo acted within the course and scope of his employment is a question of law. *See Stanfield v. Laccoarce,* 284 Or 651, 655, 588 P2d 1271 (1978). In that case the court also stated:

> "In deciding whether an employee was acting within the scope of his employment, the factors to be considered are whether the act in question is of a kind the employee was hired to perform, whether the act occurred substantially within the authorized limits of time and space, and whether

---

[4] Plaintiff relies on the symbol "1", meaning "any auto," which appears on the declarations page of the business automobile liability policy. It defines the autos covered. "Any auto" might be defined on the back of page one of the "business auto policy supplementary declarations," but the back of that page is not in evidence. We are able to determine, however, from the portion of the supplementary declarations in evidence, that "any auto" includes *only* vehicles covered by items 4, 5 and 6 of the supplementary declarations. Those consist of 101 enumerated owned vehicles (Salvo's own car is not one of them) and vehicles hired or borrowed from employes or others. The liability premiums for those autos total exactly the premium charged for the business automobile liability coverage for "any auto."

[5] Salvo's job as vice-principal included supervision of a Halloween dance at the school. His usual time of arrival would be around 7 p.m. He left school for home at 3:30 p.m. He and his wife went out for dinner and, to save time, ate at a short-order restaurant. The accident occurred just after they had left the restaurant for school. Salvo arrived at school only a few minutes after 7 p.m.

Salvo was not compensated for his regular daily commuting to school. Under his arrangement with the district for evening supervision, he was entitled to be compensated either for his dinner eaten near school or for his mileage to and from school. The district did not require that Salvo drive only on the Banfield Freeway. For the evening of the accident he submitted and received payment for mileage of 15.3 miles in each direction. The mileage for Salvo's usual route on the Banfield Freeway and the route that he followed that evening is almost identical.

the employee was motivated, at least in part, by a purpose to serve the employer. *Gossett v. Simonson,* 243 Or 16, 24, 411 P2d 177 (1966), *quoting* Restatment (Second) of Agency § 228 (1958)." 284 Or at 655.

Salvo's evening trip to supervise the school dance was of a kind he was hired to perform. He acted "substantially within" the district's time and space limitations. He was motivated to serve the district. His mileage compensation distinguishes that travel from his daily commute. *Compare Heide/Parker v. T.C.I. Incorporated,* 264 Or 535, 539, 506 P2d 486 (1973). As a matter of law, Salvo was acting within the course and scope of his employment. *See Stanfield v. Laccoarce, supra; Heide/Parker v. T.C.I. Incorporated, supra; Gossett v. Simonson, supra; Wilson v. Steel Tank and Pipe Co.,* 152 Or 386, 52 P2d 1120 (1936).

Petitions for reconsideration allowed; former opinion adhered to.