Argued and submitted May 7, 1987, at Pendleton, Oregon, affirmed July 29, reconsideration denied September 25, petition for review denied October 20, 1987
(304 Or 279)

# RUNYAN,
*Appellant,*

*v.*

# PICKERD,
*Defendant,*

*and*

# MONTGOMERY WARD & CO., INC.,
*Respondent.*

## (84-10-937; CA A39810)

740 P2d 209

W. Eugene Hallman, Pendleton, argued the cause for appellant. With him on the briefs were William J. Storie, and Mautz, Hallman & DeVore, Pendleton.

Douglas E. Hojem, Pendleton, argued the cause and filed the brief for respondent.

Before Joseph, Chief Judge, and Richardson and Warren, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

Plaintiff brought this action against Montgomery Ward (Ward) and Pickerd, the manager of Ward's Pendleton store, for injuries which she allegedly suffered as the result of Pickerd's negligence while he was driving his own automobile to the store on a Sunday morning. The basis for the claim against Ward was that Pickerd was acting within the course and scope of his employment and that Ward is therefore vicariously liable for his negligence. The trial court granted Ward's motion for summary judgment and entered a final judgment pursuant to ORCP 67B. Plaintiff appeals. We affirm.

We quote the material portions of the statement of facts in plaintiff's brief:

"[Pickerd's and Ward's] agreement when he was hired was that he would work five days a week, 40 hours a week, 8:30 to 5:30, and that he would get Saturday and Sunday off. The regional sales manager, Mr. Lambert, had insisted that his managers only work five days a week because that is all they got paid to do. Mr. Pickerd did not work weekends, although he had gone into the store on Saturday 'a couple of three times' during the first part of his employment with Montgomery Ward. Mrs. Pickerd could not remember her husband ever going into the store on a Sunday prior to the day of the accident.

"The accident in question occurred on October 23, 1983, a Sunday. The store was closed on Sunday. Mr. Pickerd planned to go down to the store and 'be back in a little bit.' Mrs. Pickerd understood that the inventory had been taken earlier in the week and her husband was going to go down to check on something while nobody was around, perhaps in the automotive department.

"Two separate reasons were advanced by Mr. Pickerd for the trip. In his first deposition, he explained that he had gone down to see if the teletype had gone off. He explained his concern as follows:

" 'I had a new girl that I was a little bit concerned about whether or not she run the thing right. On a couple of occasions it hadn't went off.

" 'It wasn't anything I had to do, just an option that I decided to do.'

"In his second deposition he qualified his answer and stated

that the teletype problem may have been one of the purposes for his trip to the store.

"In Mr. Pickerd's second deposition he offered a second reason for the trip, that being inventory. He based this testimony on what his wife had said as to his reasons for going down to the store. The general practice is to take the inventory when the store is open. The semi-annual inventory was due to be taken in another week. There is a perpetual tire inventory taken at the Montgomery Ward store. It is usually done on Saturday and put on the teletype to be picked up by [a central] computer. If the inventory was not completed on Saturday, it would not show up [on the computer]. Then what would show up would be 'a bunch of zeroes.' When that happens sometimes [the computer center] calls the store directly, and if it happens two or three times in a row from one individual store, the district sales manager is notified.

"In his affidavit Mr. Pickerd further elaborated. He stated that he stopped by the store to check on a tire inventory which had been worked on during the prior week. He wanted to attend to the inventory before Monday as it would make the work go easier on Monday."[1] (Footnote omitted.)

The focal dispute is whether, as a matter of law, Pickerd's driving to the store at the time of the accident was subject to the general rule stated in *Heide/Parker v. T.C.I. Incorporated,* 264 Or 535, 539, 506 P2d 486 (1973), "that an employee going to or from his work is not in the course of his employment at that time." As the court noted in *Heide/Parker,* there are many exceptions to the rule. Plaintiff argues, first, that Pickerd's negligence did not occur during a trip to which the rule applies, because it was not undertaken for the purpose of ordinary "commuting." *Heide/Parker v. T.C.I. Incorporated, supra,* 264 Or at 541; *Gossett v. Simonson,* 243 Or 16, 20, 411 P2d 277 (1966). She contends, second, that the journey comes within the "special errand" exception to the rule. Although plaintiff maintains that those are alternative arguments, we perceive little difference between them

---

[1] Ward does not agree with this statement in its entirety and maintains that it is incomplete and argumentative. The statement nevertheless presents the facts *at least* as favorably to plaintiff as they *could* be viewed, and it suffices for purposes of our review. The principal factual disagreement is that, according to Ward, Pickerd was a managerial employe and was not confined to a particular daily or hourly work schedule, but could select his own work times as long as he completed his work satisfactorily. *See Wilson v. Steel Tank & Pipe Co., infra,* 152 Or at 396. That distinction in the parties' view of the facts does not affect our legal conclusion.

as they apply to these facts. Their common premise is that Pickerd was outside the rule and within the exception, because he was driving to the store at a time when he was not required by his employer to be there and because he was going there to attend to matters which he perceived as being too pressing to await usual work hours.

The line between the rule and its exceptions is not always sharp. In *Wilson v. Steel Tank & Pipe Co.,* 152 Or 386, 52 P2d 1120 (1936), for example, the court held that the defendant's employe could be found to have been acting within the scope of his employment while returning to Portland from an evening business trip to Vancouver, Washington, where he had gone at the direction of a superior officer. The employe lived and worked in Portland. However, the court observed that the employe "went from Portland to Vancouver on a mission for his company" and "it was just as much a part of his duty to return to Portland, which he was doing when the accident happened, as it was in going from Portland to Vancouver. * * * It could not be expected that [the employe] would remain at Vancouver and decimate [*sic*] the citizenship of Oregon." 152 Or at 395. It was at least arguable in *Wilson* that the employe was doing nothing more than driving home after the conclusion of his work assignment; however, unlike here, that employe was not traveling between his usual place of work and his home, because the work he was performing before the accident was at a location other than his normal one. In *Heide/Parker v. T.C.I. Incorporated, supra,* the court said that the employe in *Wilson* "was more on a 'special errand' type of business for his company than * * * going to or from work." 264 Or at 541.

In *Calif. Cas. Ins. v. David Douglas School Dist.,* 71 Or App 549, 693 P2d 54, *on reconsideration* 74 Or App 270, 702 P2d 1115, *rev den* 300 Or 249 (1985), we concluded that a school vice-principal was acting within the course of his employment when he was involved in an accident while driving to the school to supervise an evening social event. However, we noted in our opinion on reconsideration:

"[The vice-principal] was not compensated for his regular daily commuting to school. Under his arrangement with the district for evening supervision, he was entitled to be compensated either for his dinner eaten near school or for his mileage to and from school." 74 Or App at 273 n 5.

*See I-L Logging Co. v. Mfgr. & Whlse. Ind. Exc.,* 202 Or 277, 273 P2d 212, 275 P2d 226 (1954) (stating general exception to going and coming rule where employe reimbursed for travel expenses or paid extra compensation for travel time); *see also Heide/Parker v. T.C.I. Incorporated, supra,* 264 Or at 537; *Larkins v. Utah Copper Co.,* 169 Or 499, 127 P2d 354 (1952).

■ The difference between this case and the ones we have discussed in which the going and coming rule was not applied is that, in each of the latter, there was some involvement of the employer or some facet of the employe's task which made the travel itself work-related or employer-sponsored. Here, conversely, the only reason for the trip was the employe's voluntary decision to perform his normal duties at an unusual time. Although the pressures of business may have been more intense at the time of Pickerd's trip than on the typical Sunday, his drive to the store was purely voluntary and uncompensated, it concerned matters which could have been and generally were attended to during the work week and it was aimed at making "the work go easier on Monday" rather than at accomplishing anything which *had* to be completed before Monday.[2] The court said in *Heide/Parker v. T.C.I. Incorporated, supra,* that the test of whether the going and coming rule applies is whether "the situation * * * [is] the same as in the ordinary case of commuting from office to home" or home to office. 264 Or at 541. The only thing extraordinary about Pickerd's trip from home to workplace is that it occurred on a day when he did not have to go to work. We hold, as a matter of law, that that is not enough to differentiate the trip from ordinary commuting.

■ Plaintiff attempts to bring Pickerd's trip within the special errand exception by analogy to the Workers' Compensation law, and quotes the definition of the exception from 1 Larson, *Workmen's Compensation Law* 4-124, § 16.11 (1985):

> "When an employee, having identifiable time and space limits on his employment, makes an off premises journey

---

[2] Plaintiff contends that there is at least a question of fact as to whether Pickerd chose to go to the store in connection with the inventory in general or out of a particular concern that the "new girl's" unfamiliarity with the teletype might have led to a shutdown or a malfunction. Plaintiff views the latter possibility as being more consistent with a special errand than the former. We do not agree. In either event, the trip was undertaken wholly at Pickerd's own instance, not at Ward's, and was for the purpose of performing work within the scope of his usual managerial duties.

which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself." (Footnotes omitted.)

Plaintiff correctly notes that, in *Heide/Parker v. T.C.I. Incorporated, supra,* 264 Or at 539, the court said that the same general rule applies in workers' compensation cases and tort cases when vicarious liability is alleged against an employer. However, the court did not suggest that application of the rule and its exceptions in the two contexts is always identical. Oregon courts have construed ORS 656.005(8)(a), which defines "compensable injury" as one "arising out of and in the course of employment," in order "to best effectuate the socioeconomic purpose of the Workers' Compensation Act: the financial protection of the worker and his/her [*sic*] family from poverty due to injury incurred in production, regardless of fault * * *." *Rogers v. SAIF,* 289 Or 633, 643, 616 P2d 485 (1980); *see also* ORS 656.012. No policy factors of corresponding force, and nothing in Oregon case law, supports plaintiff's thesis that the going and coming rule or other rules concerned with whether activity is in the course and scope of employment should be applied as liberally to attach vicarious liability to employers as they are to assure that injured workers obtain compensation.[3] Indeed, the Supreme Court took the contrary view in *Gossett v. Simonson, supra,* 243 Or at 26, when it said that vicarious liability should attach only when the employe is "about his master's business and under his control" and that, "[w]ithout these two elements, there would be no reason, in a fault-oriented tort system, to bring a non-negligent employer into the picture at all." *Compare Jenkins v. Tandy Corp.,* 86 Or App 133, 738 P2d 985 (1987). The trial court correctly granted a summary judgment.

Affirmed.

---

[3] Plaintiff points to no Oregon case which answers whether Pickerd could be found to have acted within the scope and course of his employment for workers' compensation purposes. That question is not before us.