Robert OSTERMAN
and Christine Osterman,
husband and wife,
*Appellants,*

*v.*

Clarence OSGOOD,
Lee Larson, Allen Lee Osborne,
*Defendants,*

*and*

VOLVO NORTH AMERICA, INC.,
a Delaware corporation,
*Respondent.*

(9201-00124; CA A78310)

858 P2d 893

Kathryn H. Clarke, Portland, argued the cause for appellants. With her on the briefs were Maureen Leonard and Linda J. Rudnick, Portland, for appellant Christine Osterman, Martin D. Sharp, Gresham, and Walter H. Sweek and Cosgrave Vergeer & Kester, Portland, for appellant Robert Osterman.

Donald C. McClain, Tigard, argued the cause for respondent. With him on the brief was McClain & Rayburn, Tigard.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

## WARREN, P. J.

Plaintiffs were injured in a chain-reaction auto accident. One of the cars involved was driven by Osborne and owned by his employer, Volvo North America, Inc. (Volvo). Plaintiffs sued Osborne, Volvo and two other drivers.[1] The theory of liability against Volvo was that it was vicariously liable under the doctrine of *respondeat superior*. Volvo moved for summary judgment. The trial court granted the motion and entered a final judgment. Plaintiffs appeal. We review the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to plaintiffs and determine whether Volvo is entitled to judgment as a matter of law. *Stevens v. Bispham*, 316 Or 221, 223, 851 P2d 556 (1993); *see also Stanfield v. Laccoarce*, 284 Or 651, 655, 588 P2d 1271 (1978). We reverse.

Osborne was employed by Volvo as a technical instructor. He was a salaried employee and did not have a fixed working schedule. As an instructor, he used Volvo's vehicles, including the one that was involved in the accident, to train Volvo technicians and mechanics concerning new automobiles and systems. He worked for Volvo in two offices, one in Beaverton, Oregon, and another in British Columbia, and was the only Volvo employee with his expertise and responsibility in Oregon. His Beaverton office is a technical training shop and classroom, and Volvo repair people from surrounding dealerships came to Beaverton to be trained. Because of his teaching responsibilities, Osborne was assigned late model vehicles with as many new "options" as possible. He was reassigned a new vehicle two to three times a year, and used them as "demonstrators and hands-on mechanical examples in [his] classes." Both he and his wife were also allowed to use the vehicles for personal purposes with full reimbursement from Volvo.

During the week of the accident, Osborne had taken time off work because of a sore back. On the day of the accident, he had gone to the Beaverton office to check his electronic mail. The accident took place at about 4:50 p.m., when he was returning home on his normal commuting route.

---

[1] The only defendant that this appeal concerns is Volvo.

The car Osborne drove was referred to as a "test vehicle." Under Volvo's test vehicle program, test vehicles are vehicles owned by Volvo, excluding those under its employee lease program. By policy, only designated employees, and their spouses and children under "extreme circumstances," were allowed to use Volvo's insured test vehicles with full reimbursement for gas, oil, and routine servicing and repairs. As a test driver, Osborne was required to fill out and submit a monthly "test vehicle evaluation form" cataloging both the car's fuel efficiency and its overall mechanical performance. The evaluation form was used as data in Volvo's business. In the event of accident, Osborne was required to file an accident report, particularly on the function of the vehicle's air bag in a crash. Osborne was also required to comply with all motor vehicle laws concerning operation, inspection and licensing, and "exercise due diligence and care in operating the vehicle, and maintaining the prescribed record." Failure to do so could lead to suspension of his participation in the test program. Volvo empowered a Safety Committee to review all accidents with test vehicles, and when an accident "is deemed to have been avoidable," to assess a fine as a disciplinary action. Volvo established a schedule of fines for repeated accidents.

■ The only question is whether Volvo may be vicariously liable for Osborne's conduct. Under the doctrine of *respondeat superior*, an employer is liable for an employee's torts when the employee acts within the scope of employment. *Stanfield v. Laccoarce, supra,* 284 Or at 654. There are three factors relevant for determining whether an employee acts within the scope of employment:

> "(1) whether the act occurred substantially within the time and space limits authorized by the employment; (2) whether the employee was motivated, at least partially, by a purpose to serve the employer; and (3) whether the act is of a kind which the employee was hired to perform." *Chesterman v. Barmon*, 305 Or 439, 442, 753 P2d 404 (1988).

*See also Gossett v. Simonson*, 243 Or 16, 24, 411 P2d 277 (1966); *Calif. Cas. Ins. v. David Douglas School Dist.*, 74 Or App 270, 273, 702 P2d 1115, *rev den* 300 Or 249 (1985).

■ Viewing the facts in the light most favorable to plaintiffs, we conclude that there are triable issues on those

elements. The nature of Osborne's employment, the use of his test vehicle in Volvo's business and Volvo's right to control over the test vehicle, taken together, could lead a reasonable jury to conclude that, whenever Osborne drove the vehicle, there was "some involvement of [Volvo] or some facet of [its] task which made the travel itself work-related or employer-sponsored." *Runyan v. Pickerd*, 86 Or App 542, 546, 740 P2d 209, *rev den* 304 Or 279 (1987).

Volvo contends that, under the so-called "going and coming" rule, Osborne did not act within the course of employment, because he was not using his test vehicle to train Volvo employees, but rather was on his way home. *See Heide/Parker v. T.C.I. Inc.*, 264 Or 535, 539, 506 P2d 486 (1973); *Larkins v. Utah Copper Co.*, 169 Or 499, 127 P2d 354 (1942); *Hantke v. Harris Ice Machine Works*, 152 Or 564, 568, 54 P2d 293 (1936); *Van Osdol v. Knappton Corp.*, 91 Or App 499, 755 P2d 744, *rev den* 306 Or 528 (1988). Because we conclude that a jury could find that Osborne was within the scope of his employment whenever he drove the test vehicle, the going and coming rule does not entitle Volvo to judgment as a matter of law.[2]

Reversed and remanded.

---

[2] Volvo characterizes the relationship between Volvo and those employees using the test vehicles as "bailment." We disagree. This is not a case in which the uncontradicted evidence shows that Volvo gratuitously loaned or rented Osborne a car for personal use, thus creating a bailment relationship for which no vicarious liability can be imposed on Volvo. *See Milwaukee Mechanics Ins. Co. v. Childs*, 201 Or 347, 350, 270 P2d 139 (1954).