Argued November 29, 1965, affirmed February 24, 1966

# GOSSETT *v.* SIMONSON ET AL

411 P. 2d 277

*Philip A. Levin*, Portland, argued the cause for appellant. With him on the briefs were Garret L. Romaine and Pozzi, Levin & Wilson, Portland.

*Edwin J. Peterson*, Portland, argued the cause for respondent Safeway Stores, Inc. With him on the brief were Lamar Tooze and Tooze, Powers, Kerr, Tooze & Peterson, Portland.

No appearance for respondent Vernon Simonson.

Before MCALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, DENECKE, HOLMAN and SCHWAB, Justices.

GOODWIN, J.

The plaintiff recovered a judgment against Vernon Simonson for injuries caused by the negligent opera-

tion of Simonson's automobile. The plaintiff appeals from the judgment because it did not also award damages against Simonson's employer.

Simonson is a cottage-cheese maker for Safeway Stores, Inc. He works, with three other hourly-wage earners, in the employer's Portland plant.

The Oregon Dairy Industries Conference held its annual meeting in Corvallis on February 14, 1963. Safeway participated, with other sellers of dairy products, in the financial support and activities of the conference. Simonson's plant supervisor gave him two tickets to the dinner and told him that "it would be nice" if he would attend the dinner. Simonson decided to go. He drove his own automobile. There was no evidence that Safeway agreed to reimburse him for travel expense. He was neither required to attend nor paid for attending the dinner. In 1962, Simonson had accompanied other Safeway employes to the annual dinner. Safeway had likewise bought the dinner tickets on that occasion.

On the way to Corvallis, Simonson was involved in the accident in which the plaintiff sustained injuries. The jury returned a verdict for the plaintiff against Simonson, but in favor of the defendant Safeway. The plaintiff assigns error to a number of rulings by the trial court.

One assignment asserts that Safeway should have been held liable as a matter of law for Simonson's negligence. The plaintiff also challenges the instructions given and the refusal to give her requested instructions on scope of employment.

The jury was told, in effect, that in order to hold Safeway liable Simonson's driving must have been (a) in the furtherance of Safeway's business, and

(b) an activity over which the employer had the right to exercise control. Whether or not Safeway actually exercised any control over Simonson's driving, the jury was told, the employer would not be liable for harms caused by Simonson's driving unless the employer had a right to control the activity.

The plaintiff contends that she should have been required to prove only that Simonson was serving Safeway's business purposes at the time of the accident. She supports this assertion with citations from other jurisdictions in which *respondeat superior* liability has been invoked in behalf of persons injured during off-duty errands that the tort-feasors might not have undertaken "but for" their employment. See, e.g., *Boynton v. McKales,* 139 Cal App 2d 777, 294 P2d 733 (1956).

■ We are now urged to apply the "benefit to the employer" rule to this case as the exclusive criterion for providing an additional defendant. In the past we have rejected such a test. *Crosby v. Braley & Graham,* 171 Or 72, 134 P2d 110 (1943). The weight of authority elsewhere seems to support the view that mere benefit to the employer would not suffice to render the employer liable as a matter of law. See cases collected in Annotation, 52 ALR2d 287, 330 (1957).

The Oregon cases cited in support of the plaintiff's theory are all cases in which a jury reasonably could say that the negligent employe was, at the time of the accident, doing the work he was hired to do under circumstances in which the employer had the right to control his conduct. For example, in *Wilson v. Steel Tank & Pipe Co.,* 152 Or 386, 52 P2d 1120 (1936), the operator of the offending vehicle, as a substantial part of his duties, had to drive to various places to

inspect pipe installations. He commonly used either a company car or his own car with reimbursement for expenses. He was. returning home from an out-of-town inspection job when he injured the plaintiff. The evidence was that it was not unusual for him to drive directly home from such work. He was not engaged in "driving to and from work" as that term is commonly understood in connection with commuters.

In *Tyler v. Moore et al.,* 111 Or 499, 226 P 443 (1924), a hotel porter, contrary to instructions, used an automobile instead of a hand truck to fetch a guest's baggage from the railroad station. A jury was allowed to hold the employer liable in that case because the movement of the baggage of hotel guests was the work which the servant was hired to perform. His violation of his employer's orders did not remove the work from the scope of his employment.

In *Knapp v. Standard Oil Co.,* 156 Or 564, 68 P2d 1052 (1937), a route salesman was driving his own car, but he was doing the work he was hired to do at the time of the accident in which the plaintiff was injured. The court observed that actual control was irrelevant, and that the right to control the salesman by directing him with reference to his route was a sufficient basis for holding the employer liable.

In *Larkins v. Utah Copper Co.,* 169 Or 499, 127 P2d 354 (1942), the driver, as in *Wilson v. Steel Tank & Pipe Co.,* supra, was an inspector who necessarily used his automobile in his work. While returning from an inspection trip, he injured the plaintiff. We held that the jury could properly find the activity to be within the scope of the employment, regardless of the lack of actual control over the employe's driving. Since driving his automobile was a normal part of the work the man was hired to do, the employer

had the right to exercise as much control over the inspector's driving as it did over his other activities while he was at work.

■■ In *Dalrymple v. Covey Motor Car Co.*, 66 Or 533, 135 P 91, 48 LRA (ns) 424 (1913), which plaintiff cites for the proposition that scope of employment is a question of law and not of fact, the negligent operator of the automobile was, as a part of his work, teaching a customer how to drive. There was no particular reason to be concerned about the employer's right to control the employe, because, by any definition, he was doing exactly the work which his employer paid him for doing. It should be noted in connection with the *Dalrymple* case, however, that the trial court should decide the issue of scope of employment as a matter of law only when no more than one reasonable inference could be drawn from the facts. If the facts are in dispute, the jury must determine what the facts are. When conflicting inferences reasonably can be drawn from undisputed facts, it is also for the jury to decide whether the servant was working within or outside the scope of the activities for which he had been hired. In the case at bar, the facts are not in dispute. The most that can be said on the plaintiff's behalf is that the facts may have been sufficiently ambiguous to justify submitting them to the jury with proper instructions concerning the scope of employment.

Legal theorists suggest many reasons for permitting tort victims to recover against nonnegligent masters for the negligence of their servants. The idea that a certain degree of risk distribution, or enterprise liability, works justice has been, since the days of slavery under Roman law, the principal rea-

son for the doctrine of *respondeat superior.* This policy, tinctured with a related notion that vicarious liability encourages accident prevention, has justified liability without fault on the master's part for the servant's negligent acts, if the servant was acting within the scope of his employment. See 2 Harper & James, Torts 1366, § 26.3 (1956).

Obviously, there is an authentic fault-basis for liability if the master (a) negligently hires a careless servant, or (b) negligently controls a servant who is doing the master's work. In such cases, since it is the master's own fault that causes the harm, there is no reason to discuss vicarious liability. 2 Harper & James, Torts, supra.

When courts started to hold nonnegligent masters liable, they did so on the theory that so long as the negligent servant was about his master's business and under his control it was more just that the master pay the damages than that the innocent tort victim be left without remedy. The limitation of such liability to "scope of employment" has led the courts to the inquiry whether the harm resulted from an activity over which the master had some right to exercise his supervisory prerogatives as an employer. See Harper & James, supra, and Seavey, Agency 129 (1949).

Professor Mechem also explains why the master is liable only for torts committed in the course of employment:

> "* * * If the purpose of *respondeat superior* is to put on the business, for the purpose of allocation, the risks of the business, that plainly means just the risks of carrying on the business; it does not include the risks of the personal conduct of all connected with the business, simply because they

are connected with the business * * *." Mechem, Agency 246, § 365 (1952).

Professor Mechem goes on to express doubt that any completely successful analysis of the "course of employment" concept will ever be made. He notes, however, that most attempts to formulate a rationale incorporate the following two requirements in one way or another: (a) an intent on the part of the servant to serve the master rather than to seek the servant's own ends; (b) a way of doing the master's work that does not vary unreasonably from some norm, usually the manner in which the same servant or others similarly situated ordinarily perform such work.

The Latin maxim, *qui facit per alium facit per se,* is a traditional (if unintelligible) way of indicating that legal liability "follows the action." When one employs a servant or agent to do his work, the employer is, in the eyes of the law, the actor. The damages caused by the activity are the master's responsibility, so long as it is the master's business that is being done.

■ The difficult *respondeat superior* cases present themselves when it is not at once obvious that the servant was, or was not, engaging in work of the kind he was hired to perform. Simonson, in the case at bar, was hired to make cottage cheese. When he injured the plaintiff, he was not making cottage cheese; he was driving his own car, on a route of his own choosing, on his own time, and at his own expense, to a meeting of a trade association which he was under no duty to attend, to enjoy a free dinner, and perhaps to derive therefrom some educational increment of value that would make him a better cottage-cheese maker.

We may assume that if a jury were free to hold Safeway liable under the described circumstances for Simonson's faults as a driver, solely because of some remote benefit to Safeway, there would be no limit to the liabilities which could be imposed upon employers for the off-duty torts of persons on their payroll. Many off-duty activities perhaps benefit employers to some degree, but they ordinarily constitute no part of the work employes are hired to perform. The traditional reason for holding a nonnegligent employer liable for the wrongs of his servant, therefore, does not exist in such cases. The activity causing the harm is not reasonably within the scope of the risks created by the employer's business. If the activity, furthermore, is wholly beyond the ability of the employer to assert any control, direct or indirect, over the way it is conducted or performed, there seems to be no reason to add its by-products to the employer's costs of doing business.

We approve, therefore, once again,[1] for cases in which a definition of scope of employment is required, the one found in the Restatement, Agency 2d:

"§ 228. General statement.

"(1) Conduct of a servant is within the scope of employment if, but only if:

"(a) it is of the kind he is employed to perform;

"(b) it occurs substantially within the authorized time and space limits;

"(c) it is actuated, at least in part, by a purpose to serve the master, and * * *

"(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or

---

[1] In Kowaleski v. Kowaleski, 235 Or 454, 459, 385 P2d 611 (1963), we reaffirmed the "right-to-control" test and approved Restatement, Agency 2d, § 220.

space limits, or too little actuated by a purpose to serve the master.

"Comment:

"* * * * *

"*c.* As stated in Section 220, one is a servant only if, as to his physical conduct in the performance of the service, he is subject to the control or the right to control of the master. Hence, there is no liability for the conduct of one who, although a servant in performing other service, is doing work as to which there is no control or right to control by the master.

"* * * * *."

The master's right to control the subordinate in the performance of his duties is one of the elements that sets a servant apart from independent contractors. The primary emphasis is upon the servant's customary duties performed on the employer's behalf, rather than upon some remote benefit to the business or industry of the master. Liability is assessed for harms arising out of the reasonably predictable risks created by the servant's employment. The use of the right-to-control test is one method of limiting a form of liability without fault to the area of risk created by the work an employe has been hired to perform, or which he performs under some form of direct or indirect supervision by the employer.

■ The plaintiff in the case at bar argues that one of the instructions unduly burdened the plaintiff because it required her to prove both that Simonson was driving his auto on Safeway business and that Safeway had the right to control his activity. We find no error in such an instruction. The instructions might have been more clear to the jury if the court had used the economical language of Comment *c*

which we have quoted from the Restatement. But there was no error.

■ Since the imposition of liability upon a non-negligent employer is itself an exception to the general rule that there is no legal liability without fault, a plaintiff seeking damages from such an employer must prove that the harm-producing activity was in furtherance of the employer's business and that the employer had the right to exercise some degree of control over the workman in the conduct of such activity. Without these two elements, there would be no reason, in a fault-oriented tort system, to bring a non-negligent employer into the picture at all.

■ The plaintiff's exceptions to the court's failure to give her requested instructions likewise reveal no ground for reversal. To the extent that they relied exclusively upon the "benefit to the employer" test, the requested instructions were themselves erroneous. In substance, the valid portions of the requested instructions were given. It was only by indulging in the most liberal interpretation of the conversations which accompanied the giving of the dinner tickets to Simonson that the trial court could have allowed the question of scope of employment to go to the jury at all. The jury evidently believed that even if Safeway was interested in having Simonson attend the dinner, the employer was not concerned with the manner in which he traveled.

Affirmed.