ROWE v COLWELL

1. JUDGMENT—SUMMARY JUDGMENT—PLEADING—COMPLAINTS—FAIL-
    URE TO STATE CLAIM—COURT RULES.

   A motion for summary judgment for failure to state a claim is to
   be tested by the well pleaded facts in the complaint without
   reference to depositions or affidavits, and the court must accept
   as true the well pleaded facts contained therein and may grant
   judgment only when plaintiff's claim is so clearly unenforceable
   as a matter of law that no factual development can possibly
   justify a right to recovery (GCR 1963, 117.2[1]).

2. JUDGMENT—SUMMARY JUDGMENT—FAILURE TO STATE CLAIM—
    PLEADING—LEGAL SUFFICIENCY—COURT RULES—FACTUAL SUFFI-
    CIENCY.

   A motion for summary judgment on the grounds that the oppos-
   ing party has failed to state a claim upon which relief can be
   granted requires the trial court to test only the legal suffi-
   ciency, and not the factual sufficiency, of the pleadings; where
   the "well pleaded facts" of the plaintiffs' claim met the test of
   legal sufficiency, it was error for the trial court to grant
   summary judgment for failure to state a claim upon which
   relief could be granted (GCR 1963, 117.2[1]).

3. JUDGMENT—SUMMARY JUDGMENT—APPEAL AND ERROR—NO ISSUE
    OF FACT—CONSIDERATION OF ALL EVIDENCE—REASONABLE
    DOUBT—COURT RULES.

   Review of a trial court's ruling on a motion for summary judg-
   ment on the basis that there is no genuine issue as to any
   material fact must take into consideration all depositions and
   other documentary evidence and upon review of all such mate-
   rial, summary judgment is not to be granted unless, after
   giving the benefit of every reasonable doubt to the party

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Summary Judgment § 15.
[2] 73 Am Jur 2d, Summary Judgment § 29.
[3] 73 Am Jur 2d, Summary Judgment § 26 *et seq.*
[4–8] 53 Am Jur 2d, Master and Servant § 180 *et seq.*

opposing the motion, there is no genuine issue as to any material fact (GCR 1963, 117.2[3]).

4. MASTER AND SERVANT—SCOPE OF EMPLOYMENT—JURY QUESTIONS—TRIAL COURTS.

The question of whether one who drives his own car and who after normal working hours negligently injures a third party is acting within the scope of his employment is a question which, in most instances, should be left to the jury; but where the facts are not in dispute and where no conflicting inferences may reasonably be drawn therefrom, the determination of whether the employee was acting within the scope of his employment is for the court.

5. MASTER AND SERVANT—SCOPE OF EMPLOYMENT—TRAVEL—TESTS.

The test for determining whether an employee who is traveling was acting within the scope of employment is: if the work of the employer creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own; if however, the work is merely incidental to the travel, and the trip would not have been made but for the private purpose of the servant, he is out of the scope of employment in making it.

6. MASTER AND SERVANT—SCOPE OF EMPLOYMENT—SOCIAL GATHER-INGS—TESTIMONY—INFERENCES—SUMMARY JUDGMENT—NO GENUINE ISSUES.

The relevant question in determining whether the conduct of an employee, while attending a social gathering at a superior's house, is within the scope of his employment is whether or not the employee is serving some purpose of his employer; where no permissible inferences may be drawn from the testimony to the effect that the employee might have reasonably been serving his employer the employee is not acting within the scope of his employment and summary judgment may be granted on the basis that there is no genuine issue as to any material fact (GCR 1963, 117.2[3]).

7. MASTER AND SERVANT—SCOPE OF EMPLOYMENT—SOCIAL GATHER-INGS—IMPROVED RELATIONSHIP—JURY QUESTIONS.

The law has not yet moved so far as to hold that a purely social party held during off-duty hours at a boss's home is, by reason of the improved good relationship thereby created between employee and employer, grounds for a jury determination of whether the employee was within the scope of his employment.

8. Master and Servant—Scope of Employment—Job Duties—Social Gatherings.

Cases which involve an employee driving to or returning from an assignment to which the employee had been ordered by his employer and which was part of the normal and customary job duties are inapplicable as case precedent to a situation where the employee was playing pool and cards at a purely social occasion on off-duty hours which was not a normal or customary part of the employee's job assignment.

Appeal from Oakland, Robert L. Templin, J. Submitted January 15, 1976, at Detroit. (Docket No. 24497.) Decided February 26, 1976. Leave to appeal applied for.

Complaint by Richard Rowe and Karen Rowe against Donald W. Colwell, Joanne P. Colwell and Manufacturers National Bank of Detroit for damages resulting from an automobile accident. Summary judgment was granted as to defendant Manufacturers National Bank. Plaintiff appeals. Affirmed.

*Raymond L. Krell,* for plaintiff.

*Stellberger, Aisenstein & Green,* for defendant Manufacturers National Bank of Detroit.

Before: McGregor, P. J., and Bashara and Allen, JJ.

Per Curiam. Plaintiffs appeal from an order granting summary judgment in favor of Manufacturers National Bank of Detroit based on plaintiffs' failure to state a cause of action, GCR 1963, 117.2(1), and because there did not exist any mate-

rial issue of fact, GCR 1963, 117.2(3).[1] The motion was granted based on plaintiffs' amended complaint, certain depositions hereinafter mentioned and an affidavit by counsel for defendant bank, all of which collectively considered established the following basic facts.

Defendant, Donald L. Colwell, was a loan officer of defendant Manufacturers National Bank of Detroit. On September 25, 1970, he was invited by Duke Brothers, a builder doing business with the bank, to an open house party held in the club room of the Independence Green Apartments, a project built by Duke Brothers in Farmington Township. There, he was served alcoholic beverages. The party then adjourned to the Huron River Hunting and Fishing Club in nearby Farmington Township for dinner, at which alcoholic beverages were again partaken of by Colwell. Following the dinner Colwell was invited by Don B. Dean, vice president of defendant bank to come to Dean's home in Northville to see Dean's new pool table and play pool. Colwell proceeded to the Dean home sometime between 9:30 and 10 p.m., where he played pool and again partook of alcoholic beverages. He left the Dean home about 11:15 p.m. driving a 1967 Chevrolet station wagon owned by his wife, defendant Joanne Colwell, and proceeded to drive towards home in Royal Oak. He proceeded

[1] Although the bank filed its motion for summary judgment under subsection (1) only, its trial brief in support of the motion argued that plaintiffs also failed to comply with subsection (3). Trial court's order of April 10, 1975, granting the motion did not indicate upon which provision of 117.2 the order was predicated but the caption of the order read "Order granting * * * pursuant to * * * [117.2(1)]." However, on April 16, plaintiffs filed a motion for rehearing, claiming the amended complaint complied both with subsections (1) and (3). Arguments were heard by the trial court on both subsections on May 8, and reheard on May 19. At the close of the May 19 hearing the court found "there is just no material issue of fact" and reaffirmed the summary judgment previously entered.

homeward driving at a high rate of speed, greatly in excess of the lawful limit and in a wilful and wanton and reckless manner under the influence of intoxicating liquors. In the vicinity of 15771 at 14-Mile Road, his automobile struck plaintiff Richard Rowe who a few minutes earlier had stopped to assist police officers at the scene of a prior accident and was sweeping glass from the eastbound lane of travel onto the south shoulder of 14-Mile Road.

The standard for review of a motion granting summary judgment for failure to state a claim, GCR 1963 117.2(1) (also referred to as failure to state a cause of action), is fully set forth in *Sanders v Clark Oil Refining Corp,* 57 Mich App 687, 689; 226 NW2d 695 (1975), *Greenfield Construction Co v Detroit,* 66 Mich App 177; 238 NW2d 570 (1975), and *Van Liere v State Highway Department,* 59 Mich App 133; 229 NW2d 369 (1975). Review is limited to the well pleaded facts in the complaint sans reference to depositions or affidavits. Any conclusion which may reasonably be drawn from the factual allegations may be considered. Paragraphs 4–10 inclusive and paragraph 16 allege that at the various functions Colwell was acting in furtherance of both past and future bank business relationships and was within the scope of his employment. We reject the claim that said paragraphs are not "well pleaded facts" but are mere conclusions of law. Though the pleadings could have been more detailed we find that the statements made therein are both statements of law and fact and are no more conclusions of law than the allegations found in *Sanders and Greenfield, supra.*[2] A 117.2(1) motion tests only the legal,

---

[2] For example, in *Sanders* an allegation that Clark Oil " 'exercised control over the management of the service station * * * by contractual arrangements and also by the right of control' " was found

not the factual, sufficiency of the pleadings. *Van Liere, supra,* 137. To the extent that the trial court based its ruling on subsection (1) of GCR 1963, 117.2 it did so erroneously.

Did the trial court also err in ruling under subsection (3) of GCR 1963, 117.2 that there was no genuine issue as to any material fact?[3] Unlike appellate review under subsection (1), subsection (3) review must include consideration of all depositions and other documentary evidence. *Hutchings v Dave Demarest & Co,* 52 Mich App 274, 278; 217 NW2d 72 (1974). Upon review of all such material, summary judgment is not to be granted unless, after giving the benefit of every reasonable doubt to the party opposing the motion, there is no genuine issue as to any material fact. Two depositions of Colwell and the deposition of Dean fully describe the circumstances of the afternoon and evening preceding the accident. Upon careful review of the depositions we find no dispute as to the facts appearing therein. However, we do find a major dispute as to the conclusion to be drawn from such facts, viz: was Colwell acting within the scope of his employment or performing services which benefited his employer.[4]

---

sufficient even though the facts for this conclusion were not set forth in the pleadings. In *Greenfield,* pleadings which alleged the existence, modification and breach of a contract were found to state a claim.

[3] At the close of the May 19, 1975 hearing the Court stated:

"This Court finds that there is just no material issue of fact; * * * the Court also finds that there is just nothing from which a Court or a jury could infer that Donald W. Colwell was engaged any way in the scope of his employment with the bank at the time of the accident and, therefore, the Court will grant and has initially granted the motion for summary judgment on behalf of Manufacturers National Bank of Detroit and the Court will reaffirm that summary judgment."

[4] At oral argument plaintiff's counsel was asked what facts set forth in the depositions were in dispute. Counsel replied the only fact in dispute was whether Colwell was within the scope of his employment. This, however, we perceive to be a legal conclusion to be drawn from the facts appearing in the depositions.

The depositions disclose that the afternoon party was not arranged or sponsored by defendant bank but was sponsored by Duke Brothers who from time to time did business with the bank; that Colwell was not personally invited by Duke Brothers but attended after he was informed of the party by one of his bank superiors who asked if he would like to go; that Colwell had not handled any mortgages or loans to Duke Brothers; that Colwell attended the party after his normal working hours, driving his wife's car; that no business was transacted there or at the dinner; that other banking institutions were represented at the party and dinner and that Colwell was under no compulsion to attend. With reference to Colwell's visit to the Dean residence the depositions disclose that Dean was Colwell's immediate superior at the bank; that Dean "invited" him and three or four other bank employees to come to his home to see his new pool table; that the Dean party was purely social and no business was transacted; that he arrived at the Dean home about 10 or 10:15 p.m. and remained about 45 minutes; that while there he first played pool with Dean's wife and thereafter briefly played cards; that his route to and from the Dean residence was not dictated by the bank nor had Dean "requested" or ordered him to attend the social visit.

Based upon the foregoing deposition testimony and the allegations contained in plaintiffs' amended complaint must this Court hold that as a *matter of law* Colwell was not within the scope of his employment and thus affirm the trial court or must we hold that the issue is jury submissible and reverse? In most instances the question of whether one who drives his own car and who after normal working hours negligently injures a third

party is acting within the scope of his employment is a question which should be left to the jury. 10B Blashfield's Cyclopedia of Automobile Law and Practice (perm ed), § 6637, p 286. But where the facts are not in dispute and where no conflicting inferences may reasonably be drawn therefrom, the determination of whether the employee was acting within the scope of his employment is for the court. Blashfield, *supra,* p 320. In *Ten Brink v Mokma,* 13 Mich App 85, 87; 163 NW2d 687 (1968), our Court adopted the following test for determining whether an employee was acting within the scope of employment:

" 'If the work of the employer creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. If, however, the work is merely incidental to the travel, and the trip would not have been made but for the private purpose of the servant, he is out of the scope of his employment in making it.' "

See also *Long v Curtis Publishing Co,* 295 Mich 494; 295 NW 239 (1940), *Kester v Mattis, Inc,* 44 Mich App 22; 204 NW2d 741 (1972).[5]

---

[5] In some jurisdictions the applicable test is taken from the Restatement of Law which is worded as follows:

"(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

"(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Restatement of the Law, Agency, 2d, § 228. Cited with approval in *Gossett v Simonson,* 243 Or 16, 24–25; 411 P2d 277, 281 (1966).

After juxtaposing the prescribed test to the deposition facts we adjudge that no error was committed in the ruling of the trial court. Whether Colwell was or was not serving some purpose of the bank while he attended the happy hour reception and dinner is not determinative of our decision. Assuming, arguendo, that Colwell was then within the scope of his employment, the relevant question is whether he continued in such posture while attending the social gathering at Dean's home. We conclude he did not and further opine that no permissible inference to the effect that he might have reasonably been serving his employer may be drawn from the testimony. The occasion was purely social. The invitation was to see Dean's new pool table and play pool. While present, Colwell played pool and cards. Plaintiff argues that the deposition testimony also includes an acknowledgment by Dean that his assigned duties included attending social functions and the social function at his home created a good relationship which could result in bank employees, including Colwell, to render a better work performance for the bank. This deposition-contained fact, plaintiff contends, creates a permissible inference sufficiently strong to take the question of *respondeat superior* to the jury. We respectfully disagree. The recitation of Dean's testimony is not accurate.[6] More to the point, we believe the reasoning stretches too thin. Generally, a person's social friends are also some of those with whom he customarily works including his immediate superior. To hold that a purely social party held at off-duty hours at the boss's home is, by reason of the improved good relation-

[6] While Dean did state that his duties included attending social functions he stated they were social functions "involved with the bank". He did not state that a party at his own home where no business was discussed was part of his assigned duties.

ship thereby created between employee and employer, grounds for a jury determination of whether the employee was within the scope of his employment, is tantamount to making the employer liable for any negligent act of his employee occurring either going to or coming from an off hours social gathering of its employees. The law has not yet moved so far. While we find no case in Michigan directly on point, other jurisdictions have rejected plaintiff's position.

On facts closely parallel, but less favorable to defendant, than those present here, *Brehm v Dobson,* 15 Ill App 3d 285; 304 NE2d 149 (1973), affirmed a summary judgment in favor of the corporate defendant. There, defendant's sales manager, whose duties included entertaining persons cn behalf of defendant, attended an employee Christmas party held at the corporate office where he partook of alcoholic beverages. Driving home from the party in his own car he struck plaintiff. Plaintiff was unsuccessful in his claim that because the employee's duty to entertain inured to the benefit of the employer's "morale boosting" Christmas party a jury question was presented. In *Nichols v McGraw,* 152 So 2d 486 (Fla App, 1963), plaintiff was injured shortly after an automobile salesman employed by Gerlach Motor Company left an evening Christmas party driving a car which the salesman had purchased from the employer but which still bore the dealer's tag. After leaving the party at 9 p.m., the employee drove towards Pasadena intending to deliver Christmas gifts to friends. The accident occurred at about 9:30 p.m. Upon appeal summary judgment granted prior to trial in favor of Gerlach was affirmed, the court stating that after the Christmas party ended the employee had embarked on a frolic of his own.

Similarly, it could be said of the instant case that after the Duke Brothers' party, Colwell embarked on a social visitation of his own. A directed verdict in favor of defendant based upon the failure of the opening statement to show the tortfeasor employee was in the scope of his employment was affirmed in *Rogers v Allis Chalmers Mfg Co,* 85 Ohio App 421; 88 NE2d 234 (1949). Plaintiff was injured when struck by a golf ball driven by one of defendant's Norwood Plant employees while playing golf as a member of a company-sponsored team. Play was after normal working hours but the green fees were paid by the company which supplied the team with a T-shirt on which the company name appeared.

"Whatever its motive and whatever benefit the Norwood plant conceived flowed to it as the result of sponsoring and financing an organized recreational plan for its employees, it seems clear that any participating employee while so engaged would not be acting within the scope of the employment for which he was paid and by which he earned his daily bread." *Rogers v Allis Chalmers Mfg Co, supra,* p 427; 88 NE2d at 237–238.

In *Gossett v Simonson,* 243 Or 16; 411 P2d 277 (1966), one Simonson, a cottage cheese maker for Safeway Stores, Inc., was given two tickets for a dairy industry conference to be held in a distant city. The tickets were given him by his plant supervisor who told him "it would be nice" if he would attend. Safeway participated in sponsoring the conference. While driving to the meeting in his own car Simonson struck plaintiff's vehicle. The jury returned a verdict for plaintiff against Simonson but in favor of Safeway. On appeal counsel argued that because Simonson's attendance at the conference would make him a better cottage

cheese maker thus benefiting his employer, error was committed in not finding Simonson was acting within the scope of his employment. The argument was rejected, the court saying:

"We may assume that if a jury were free to hold Safeway liable under the described circumstances for Simonson's faults as a driver, solely because of some remote benefit to Safeway, there would be no limit to the liabilities which could be imposed upon employers for the off-duty torts of persons on their payroll. Many off-duty activities perhaps benefit employers to some degree, but they ordinarily constitute no part of the work employes are hired to perform. The traditional reason for holding a non-negligent employer liable for the wrongs of his servant, therefore, does not exist in such cases. The activity causing the harm is not reasonably within the scope of the risks created by the employer's business. If the activity, furthermore, is wholly beyond the ability of the employer to assert any control, direct or indirect, over the way it is conducted or performed, there seems to be no reason to add its by-products to the employer's costs of doing business." [7] *Gossett v Simonson, supra,* p 281.

See also *F W Barr v Colorado Interstate Gas Co,* 217 Fed Rptr 2d 85 (CA 5, 1954).

Finally, we reject as inapplicable to the instant situation the principal cases cited by plaintiff as authority for taking this case to the jury.[8] In *Ten Brink* the employee was en route to a semiannual meeting of the employer to which his attendance was required. *Burchett,* a workmen's compensation

---

[7] While this case admittedly involved a jury decision rather than a summary judgment before trial the above quoted language clearly implies that where the "sole" evidence of acting within the scope of employment is by reason of a remote potential benefit to the employer, summary judgment would be proper.

[8] *Ten Brink v Mokma,* 13 Mich App 85; 163 NW2d 687 (1968), *Burchett v Delton-Kellogg School,* 378 Mich 231, 144 NW2d 337 (1966), *Wilson v Steel Tank & Pipe Co of Oregon,* 152 Or 386; 52 P2d 1120 (1935).

case, adopted the dual-purpose doctrine. There, a school teacher sought compensation for injuries sustained while driving home from school carrying books which she was to use that night to prepare the next day's lessons. The evidence conclusively established that the teacher was required to do work at home. In *Wilson,* a job installation superintendent was driving his own car home from a distant city where, on orders of the company president he had visited a brewery at which his employer was installing steel tanks. These cases, unlike the instant situation, all involved the employee driving to or returning from an assignment to which the employee had been ordered and which was part of the normal and customary job duties. In the instant case we can hardly say that playing pool and cards at a purely social occasion on off-duty hours was a normal or customary part of Colwell's job assignment. Our conclusion does not go so far as to hold that in off-hours social engagements an employee *as a matter of law* is not within the scope of his employment. We can conceptualize instances where a jury question would be presented, as for example, a social occasion where some business was transacted. We hold only that on the file presented in this case defendant Colwell was not so acting.

Affirmed. Costs to defendants.