# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD C. SECOSKY,

Plaintiff-Appellee,

v

JADE ALEXIS SANDERS,

Defendant-Appellant.

UNPUBLISHED
October 21, 2014

No. 316441
Washtenaw Circuit Court
LC No. 13-000331-NI

YVONNE BEACH, a Protected Person, by and
through BRAD BEACH, her Conservator, and
ANDERSEN BEACH, a Minor, by his Next
Friend BRAD BEACH,

Plaintiffs-Appellees,

v

JADE SANDERS,

Defendant-Appellant,

and

RICHARD C. SECOSKY,

Defendant.

No. 316544
Washtenaw Circuit Court
LC No. 12-001172-NI

RICHARD C. SECOSKY,

Plaintiff-Appellee,

v

UNIVERSITY OF MICHIGAN REGENTS,

Defendant-Appellant.

No. 316688
Court of Claims
LC No. 13-000035-MZ

-1-

Before:  HOEKSTRA, P.J., and WILDER and FORT HOOD, JJ.

PER CURIAM.

These consolidated cases arise out of an accident on July 4, 2012, which occurred when a vehicle owned by the University of Michigan and driven by defendant Jade Sanders collided with a motorcycle ridden by plaintiffs Richard Secosky and Yvonne Beach.  In Docket No. 316441 and Docket No. 316544, Sanders appeals as of right the orders denying her motions for summary disposition on governmental immunity grounds in regard to the lawsuits brought against her by Secosky and Beach respectively.  In Docket No. 316688, the University of Michigan Regents ("the University") appeal as of right the order denying a motion for summary disposition in regard to Secosky's lawsuit.  Because Sanders was not acting within the course of her employment at the time of the accident, and thus was not entitled to the protections of governmental immunity, we affirm the trial court's denial of summary disposition in Docket Nos. 316441 and 316544.  Because Secosky failed to comply with the notice requirements of MCL 600.6431(1), and such failure mandates dismissal of Secosky's suit against the University, we reverse the trial court and remand for the entry of summary disposition in favor of the University in Docket No. 316688.

## I.  DOCKET NO. 316688

On appeal, the University argues that it is entitled to summary disposition because of Secosky's failure to comply with the notice requirements found in MCL 600.6431.[1]  Specifically, the University identifies what it considers two defects in the notice provided by Secosky.  First, the University notes that Secosky's notice was signed by his attorney, and not Secosky, which the University asserts runs afoul of the requirement that the "claimant" sign the notice.   Second, the signature of Secosky's attorney's was not verified before an officer authorized to administer oaths, which the University argues was also a violation of MCL 600.6431(1).

We review the grant or denial of summary disposition de novo.  *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).  Likewise, the applicability of governmental immunity is

---

[1] Secosky argues on appeal that this Court lacks jurisdiction in Docket No. 316688 because the University's motion for summary disposition before the trial court merely asserted a lack of jurisdiction for failure to file the appropriate pre-suit notice and did not assert its immunity as a governmental agency.  Contrary to this argument, relying primarily on Secosky's failure to comply with MCL 600.6431, the University moved for summary disposition under MCR 2.116(C)(4), (C)(7), (C)(8), and (C)(10), including within its arguments the assertion that the University was immune from suit on governmental immunity grounds.  While the trial court did not expressly discuss governmental immunity, the trial court's denial of the University's motion, which involved assertions of governmental immunity, nevertheless vests us with jurisdiction under MCR 7.203(A)(1).  See MCR 7.202(6)(a)(v); *Conmy v Dep't of Transp*, 272 Mich App 138, 140; 724 NW2d 297 (2006).

a question of law that is reviewed de novo. *County Rd Ass'n of Mich v Governor*, 287 Mich App 95, 117-118; 782 NW2d 784 (2010). The specific issue of whether MCL 600.6431 requires dismissal of a plaintiff's claim for failure to provide the required notice in the manner prescribed in the statute involves a question of statutory interpretation, which we also review de novo. *McCahan v Brennan*, 492 Mich 730, 736; 822 NW2d 747 (2012).

When engaging in statutory interpretation, a court's primary aim is to discern and give effect to the Legislature's intent. *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 159; 615 NW2d 702 (2000). Because the most reliable evidence of the Legislature's intent is the language of the statute, we begin with an examination of the statue's plain language, affording words their common and ordinary meaning. *Id.*; *McCahan*, 492 Mich at 736. "If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." *Sprenger v Bickle*, 302 Mich App 400, 403; 839 NW2d 59 (2013) (citation omitted).

Generally, pursuant to MCL 691.1407(1), governmental agencies are immune from tort liability when engaged in the exercise or discharge of a governmental function. The government may, however, voluntarily subject itself to liability, and the Legislature has done so with the enactment of six statutory exceptions to governmental immunity, including the motor vehicle exception which renders governmental agencies "liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." MCL 691.1405. See also *McLean v Dearborn*, 302 Mich App 68, 73; 836 NW2d 916 (2013). "However, because the government may voluntarily subject itself to liability, it may also place conditions or limitations on the liability imposed." *McCahan*, 492 Mich at 736.

At issue in the present case is a prerequisite to the right to sue the state, specifically, MCL 600.6431, which conditions the right to sue the state on the provision of notice consistent with the requirements in the statute. See *McCahan*, 492 Mich at 736-737, 743-745. In relevant part, this provision states:

> (1) No claim may be maintained against the state unless the claimant, within 1 year after such claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against the state or any of its departments, commissions, boards, institutions, arms or agencies, stating the time when and the place where such claim arose and in detail the nature of the same and of the items of damage alleged or claimed to have been sustained, which claim or notice shall be signed and verified by the claimant before an officer authorized to administer oaths. [MCL 600.6431(1).]

The language of MCL 600.6431(1) is clear, and failure to satisfy its strictures is well-recognized to necessitate dismissal of a plaintiff's action, even where the governmental agency has been otherwise put on notice of the plaintiff's intent to sue. See *McCahan*, 492 Mich at 743-747. As the Court explained in *McCahan*, "[W]hen the Legislature specifically qualifies the ability to bring a claim against the state or its subdivisions on a plaintiff's meeting certain requirements that the plaintiff fails to meet, no saving construction—such as requiring a defendant to prove actual prejudice—is allowed." *Id.* at 746.

In this case we consider whether Secosky has satisfied MCL 600.6431(1)'s express requirement that the notice must "be signed and verified by the claimant before an officer authorized to administer oaths."[2] Considering the plain language of the statute and the notice provided by Secosky in the present case, it becomes readily apparent that Secosky's notice was defective for two reasons. First, Secosky's attorney, rather than Secosky, signed the notice in this case. Plainly, the statute requires the document to be "signed . . . by the *claimant*," and a claimant is, by definition, "a person who makes a claim." *Random House Webster's College Dictionary* (1992). See also *Black's Law Dictionary* (9th ed) (defining "claimant" as "one who asserts a right or demand, esp. formally"). Secosky, not his attorney, has made the claims supporting his lawsuit and, as the "claimant" in this case, it was Secosky's signature which was required to afford proper notice to the University pursuant to MCL 600.6431(1).[3] Second, not only did Secosky fail to sign the notice document, the notice was not verified before an officer authorized to administer oaths. Generally speaking, "verification" refers to "a certification of truth," *Jackson v Detroit Bd of Ed*, 18 Mich App 73, 80; 170 NW2d 489 (1969), or "[a] formal declaration made in the presence of an authorized officer . . . whereby one swears to the truth of the statements in the document," Black's Law Dictionary (9th ed. 2009). By statute, other than instances where a particular officer is required, a justice, judge, clerk of a court, or a notary public may administer an oath. MCL 600.1440(1). Thus, by the plain terms of the statute, a claimant must certify the truth of the notice before an officer authorized to administer oaths, such as a judge, clerk of a court, or notary public. Secosky did not do so; instead, his attorney merely signed the document, unwitnessed by a notary public or other officer authorized to administer oaths.

---

[2] Secosky argues on appeal that the University waived its opportunity to object under MCL 600.6431 because the University did not immediately inform Secosky's counsel of the defects in his notice, despite the request in the notice that the University do so. This argument is unavailing. It was Secosky's obligation, not the University's, to comply with MCL 600.6431 and the University was under no obligation to advise Secosky that his notice was defective under MCL 600.6431. Far from waiving the issue, the University raised the matter as an affirmative defense in its first responsive pleading to Secosky's complaint. The issue has not been waived.

[3] In arguing against this result, on appeal, Secosky raises numerous "what if" arguments, asking how a claimant could provide the required signature if he or she was, for instance, a minor, someone suffering from a physical disability making it impossible to sign a document, or an individual who was otherwise incapacitated. In Secosky's view, a plain reading of the statute would produce an "untenable" result in such circumstances and we must therefore depart from the statute's plain language. The hypothetical examples relied on by Secosky are inapposite, however, given that Secosky is not a minor, he is not incapacitated, and he suffers from no physical limitations which would have prevented his signature. On the facts of this case, we see no reason to determine when, if ever, the signature of a representative, such as a conservator or next friend, could suffice as that of a "claimant" under MCL 600.6431(1). In short, Secosky's hypothetical concerns provide no basis on which to depart from the statute's plain language or to excuse his failure to comply with the clear requirements of MCL 600.6431(1).

Given Secosky's failure to comply with MCL 600.6431(1), it follows that his claim against the University was precluded and summary disposition should have been granted. See *McCahan*, 492 Mich at 733, 746-747, 752. In Docket No. 316688, we thus remand the case to the trial court for the entry of summary disposition in favor of the University of Michigan.

## II. DOCKET NOS. 316441 AND 316544

On appeal, Sanders argues that summary disposition should have been granted under MCR 2.116(C)(7) and (C)(10) because she was a governmental employee entitled to the protections of governmental immunity under MCL 691.1407(2). In particular, the parties dispute on appeal whether the accident occurred while Sanders was "in the course of employment" as required for a governmental employee to claim immunity under MCL 691.1407(2).

When a claim against a governmental employee is barred by the assertion of governmental immunity, summary disposition is appropriate under MCR 2.116(C)(7). *Petipren v Jaskowski*, 494 Mich 190, 201; 833 NW2d 247 (2013). We review the grant or denial of summary disposition de novo and the applicability of governmental immunity de novo. *Maiden*, 461 Mich at 118; *County Rd Ass'n of Mich*, 287 Mich App at 117-118. "When reviewing a motion for summary disposition under MCR 2.116(C)(7), all well-pleaded allegations must be accepted as true and construed in favor of the nonmoving party, unless contradicted by any affidavits, depositions, admissions, or other documentary evidence submitted by the parties." *Pierce v Lansing*, 265 Mich App 174, 177; 694 NW2d 65 (2005). "If no facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law." *Id*.

As an individual governmental employee, Sanders seeks to claim immunity from suit under MCL 691.1407(2), which states:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member *while in the course of employment or service* or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. [Emphasis added.]

Under this provision, the governmental employee bears the burden of proving his entitlement to governmental immunity as an affirmative defense. *Odom v Wayne Co*, 482 Mich 459, 479; 760 NW2d 217 (2008).

The trial court denied Sanders's motion for summary disposition because it determined that the accident did not occur "in the course of employment," and the parties have framed their appellate arguments in terms of whether the accident involving Sanders occurred in the course of her employment. Relevant to this issue, whether an individual governmental tortfeasor was acting during the course of employment will generally be determined with reference to common-law tort and agency principles. *Ross v Consumers Power Co*, 420 Mich 567, 624 n 38; 363 NW2d 641 (1984). See also *Backus v Kauffman*, 238 Mich App 402, 407 & n 1; 605 NW2d 690 (1999). Thus, the necessary considerations for whether a governmental employee was acting within the course of his employment are "(1) the existence of an employment relationship, (2) the circumstances of the work environment created by the employment relationship, including the temporal and spatial boundaries established, and (3) the notion that the act in question was undertaken in furtherance of the employer's purpose." *Niederhouse v Palmerton*, 300 Mich App 625, 633; 836 NW2d 176 (2013).

The following undisputed facts, drawn from Sanders's deposition, are relevant to a determination of whether the accident occurred in the course of Sanders employment. In the summer of 2012, Sanders attended the University of Michigan for a public health fellowship with the University's School of Public Health. As a part of the fellowship, Sanders was paid a stipend of $3,500 by the University for her eight-week internship with a nonprofit organization in Detroit. During the fellowship, Sanders served at her internship in Detroit from Monday to Thursday and attended seminars at the University on Friday. The stipend paid by the University included access to a fleet of seven vehicles owned by the University that could be used for both work and personal reasons. All 50 students in the fellowship program had access to the vehicles, the keys to which were kept in the community kitchen at the housing for the fellowship students. There is no evidence that the University placed any specific restrictions or conditions on the use of those vehicles.

On occasion, some of the fellowship students participated in what Sanders described as "organized recreational activities" for which they could use the University's vehicles. Students "who were interested" in such activities organized the outings and requested permission from the fellowship program manager, who in turn sought approval from the program director, for the use of the vehicles. The outings were voluntary and Sanders in fact participated in only one such event. Specifically, a few days before July 4, 2012, one of the fellowship participants sent an e-mail to the others fellows, indicating that she was "interested in taking a trip to Silver Lake for the 4th of July holiday." Included as recipients of the e-mail were the program manager and program director, who Sanders "guess[ed]" must have thereafter agreed to the event. Those individual fellowship students who wished to participate signed up for the outing. Sanders described the plans for the outing as follows: "We were going to spend the day on the lake, swim in the lake. We also threw the football around, and played volleyball there. So, we were just going to relax on the lake."

On July 4th, the group took three vehicles—two minivans and a sedan—for the 30 or 40 minute drive to Silver Lake. A few participants volunteered to drive the vehicles, and though

Sanders did not drive to the lake, she volunteered to drive on the return trip. After spending four hours or so at the lake—swimming, throwing a football, and playing volleyball—the group began their return trip back to the University. It was during this return trip that the vehicle driven by Sanders and the motorcycle ridden by Secosky and Beach collided. Secosky and Beach suffered significant injuries from the accident.

Given these facts, Sanders argues that she was acting in the course of her employment at the time of the accident and that, therefore, she is entitled to governmental immunity under MCL 691.1407(2). In particular, Sanders emphasizes that she had use of the vehicle as part of her participation in the fellowship program, she had permission from the University to take the vehicle to and from Silver Lake on the day in question, and she was driving a group of fellowship students when the accident occurred. Sanders argues that, in these circumstances, her actions occurred in the course of her employment at the University such that she is entitled to governmental immunity and summary disposition. In contrast, Secosky and Beach contend that the trip to Silver Lake did not further the University's purpose, but rather it amounted to a recreational trip, outside the temporal and spatial boundaries of Sanders's employment. Because Sanders's journey to Silver Lake was undertaken for purely personal reasons, Secosky and Beach assert that Sanders use of the vehicle did not occur in the course of her employment and she is, therefore, not entitled to the protections of governmental immunity under MCL 691.1407(2).

Given the undisputed facts, it is plain that Sanders was not acting in the course of her employment while driving the vehicle back from her visit to Silver Lake for the July 4th holiday. Accepting that Sanders had an employment relationship with the University,[4] the facts nonetheless demonstrate that Sanders's voluntary participation in a purely recreational outing was not in furtherance of the University's purpose and it was outside the circumstances of her work environment, including the temporal and spatial boundaries established by Sanders's employment.

Specifically, in terms of the circumstances of Sanders's work environment, her schedule typically involved Monday through Friday commitments for the University, with Monday through Thursday spent at her internship in Detroit and Fridays devoted to seminars at the University. Because Sanders went to Silver Lake on July 4, a national holiday on which Sanders

---

[4] On appeal, Beach makes the cursory assertion that Sanders's participation in the fellowship program as essentially a student may not establish an employment relationship. The argument is not well-developed and may be considered abandoned given Beach's insufficient briefing of the matter. See *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003). In addition, this assertion runs counter to Beach's complaint in which she maintained that Sanders had an employment relationship with the University. Given Beach's earlier concession of such a relationship, we see no reason to consider the matter further. See *Angott v Chubb Group Ins*, 270 Mich App 465, 470; 717 NW2d 341 (2006) ("A party is bound by its pleadings."). And, in any event, individuals may have dual status as both students and employees. See *Regents of Univ of Mich v Mich Employment Relations Comm*, 389 Mich 96, 110; 204 NW2d 218 (1973).

had no work obligations for the University, Sanders was outside both the temporal and spatial limits of her employment with the University. That is, no evidence suggests that Sanders's employment duties required travel to and from Silver Lake on the Fourth of July, or that she performed any work related duties during said outing. See generally *Rogers v JB Hunt Transp, Inc*, 466 Mich 645, 651; 649 NW2d 23, 26 (2002) ("[I]t is well established that an employee's negligence committed while on a frolic or detour, or after hours, is not imputed to the employer." (internal citations omitted)). In short, given the nature of Sanders's employment with the University and her temporal and spatial boundaries, there is simply no basis on which to conclude that the trip fell within the circumstances of her work environment. Cf. *Backus*, 238 Mich App at 409 (concluding teacher driving between two schools during the middle of her workday, from one teaching assignment to another, as was her customary fashion, was in the course of her employment where there was nothing to suggest that her travel was "motivated by any purpose other than discharging her duties . . .").

Most importantly, it is readily apparent that Sanders undertook the recreational trip to the lake for purely personal reasons in order that she could, along with other participants, enjoy a relaxing day at the beach. The trip was organized by fellowship participants, not the University, and participation in the outing was purely voluntary. Attendance at a voluntary, purely social, off-duty event, even where the event is organized and attended by fellow employees, does not— even if the event arguably improves morale or employee relationships—further the employer's purpose, and such purely personal activity is thus not within an employee's course of employment. See *Rowe v Colwell*, 67 Mich App 543, 551-552; 241 NW2d 284 (1976) (rejecting claim that employee's attendance at "a purely social party held at off-duty hours at the boss's home" was within the scope of employment even though the event arguably improved employee relationships). Given the purely social and recreational nature of the outing, it cannot be said to further the University's purpose.

Indeed, far from requiring participation in the trip as part of Sanders's employment or benefiting from the outing, the only involvement the University had with the trip consisted of the permission given to the participants to take University owned vehicles. The University's approval of the use of the vehicles does not, however, lead to the conclusion that when Sanders drove on the return trip from Silver Lake she did so as part of her employment. On the contrary, the University undisputedly allowed the vehicles to be used by the participants for "personal" reasons, i.e., reasons that were not undertaken in furtherance of the University's purpose. The voluntary, recreational trip in question was plainly one such "personal" use of the vehicles, unrelated to Sanders's employment responsibilities. See generally *id.* at 551-552.[5] In sum, on

---

[5] See also *Lyons v Ford Motor Co*, 330 Mich 684, 687; 48 NW2d 154 (1951) (holding after hours use of vehicle not in the course of employment where employee was "furnished a car by his employer, not only for use in his employer's business, but also for his personal use"); *Lulay v Parvin*, 359 Ill App 3d 653, 657; 834 NE2d 989 (2005) (holding a company that allowed employees to use company motorcycles for personal use not liable where employees used the motorcycles after hours for personal enjoyment); *Gregg v Cooper*, 812 NE2d 210, 218 (Ind Ct App 2004) (concluding employee who had agreement allowing his use of employer's tractor in

the undisputed facts, it is clear that Sanders and the other participants used the vehicle on the Fourth of July for a purely personal, recreational outing, unrelated to furtherance of the University's purpose.

Because Sanders's personal use of the vehicle was outside the circumstances of her work environment and unrelated to furthering her employer's purpose, her use of the vehicle was not undertaken in the course of her employment.[6] Consequently, she is not entitled to the protections of MCL 691.1407(2) and the trial court properly denied her motion for summary disposition on governmental immunity grounds.

We affirm in Docket Nos. 316441 and 316544, but we reverse and remand for the entry of summary disposition in Docket No. 316688 in favor of the University. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Kurtis T. Wilder
/s/ Karen M. Fort Hood

---

exchange for labor was not within the scope of employment where employee was using tractor for his own benefit at the time of the collision).

[6] In contrast to this conclusion, on appeal, Sanders argues that this case is nearly identical to the facts in *Niederhouse*, 300 Mich App 625, and that, therefore, the holding in *Niederhouse* that the defendant acted in the course of his employment supports her case. However, unlike *Niederhouse*, Sanders was not acting at the time of the accident in compliance with the expressed wishes of her employer. That is, in *Niederhouse*, the employer previously requested that the employee drive the airboat at the festival, while in comparison, Sanders and the other fellowship students who drove University vehicles during the trip to Silver Lake volunteered themselves without any interaction with the University on the subject. Further, in *Niederhouse*, the employee drove the airboat at a festival organized and run by the Sheriff's department for the benefit of the general public; in such circumstances, the employee's act of driving of the airboat, while not part of his typical duties, furthered the organization's purpose in serving the public. As discussed, Sanders's trip was, in contrast, organized by the fellowship students themselves and undertaken for purely personal reasons. Accordingly, *Niederhouse* is distinguishable from this case, and does not support Sanders's arguments on appeal.